No. 112,913

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT ALFRED GAUGER, III,
*Appellant*.

SYLLABUS BY THE COURT

1.

We review best evidence challenges on appeal for an abuse of discretion.

2.

Under the best evidence rule, a printed version of an electronically stored document may be admitted as the original, provided there is no genuine dispute regarding authenticity.

3.

Unpreserved instructional error claims are reviewed for clear error no matter when the alleged error occurred during trial.

4.

Under the facts of this case, a preliminary instruction informing the jurors that "a mistrial is an expense and inconvenience to the parties, the Court, and taxpayers" was legally and factually appropriate.

1

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed January 8, 2016. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Michael G. Jones*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BUSER and SCHROEDER, JJ.

STANDRIDGE, J.:  Robert Alfred Gauger, III, appeals his conviction for theft by deception. First, he argues that the district court erred by admitting three exhibits into evidence because they violated the best evidence rule. Second, he argues the district court denied him his constitutional right to a fair trial by instructing the jury that a mistrial would be an expense and inconvenience to the parties, the court, and the taxpayers. For the reasons stated below, we affirm Gauger's conviction.

FACTS

Gauger began working for Linaweaver Construction in August 2012. His employment, however, ended on November 5, 2012. At some point after November 5, 2012, Gauger called Mark Linaweaver, the owner of Linaweaver Construction, and asked him for permission to purchase some car batteries on Linaweaver Construction's account at O'Reilly Auto Parts (O'Reilly). Mark denied this request.

In December 2012, Karen Moon, who was an administrative assistant for Linaweaver Construction at that time, was reviewing a monthly invoice from O'Reilly. Employees would sometimes purchase items at O'Reilly and charge the items to the company's account. Part of Moon's job was to match the receipts submitted by employees to the charges listed on the invoice. If there was a missing receipt, she would print an electronic copy of the receipt from O'Reilly's website. While reviewing the O'Reilly

invoice, she noticed that there were missing receipts for the purchase of some batteries and a quart of oil. The charges had been signed for by a person named "Robert." Moon knew, however, that no one named Robert worked at Linaweaver Construction at the time the charges were made.

Moon took the invoice and printed receipts to Mark. He told her he believed Gauger was the person who had made the charges and that Gauger did not have authorization to do so. Moon then called the O'Reilly store where the purchases had been made, and the store credited the charges back to Linaweaver Construction.

In May 2013, the State filed a complaint against Gauger charging him with one count of theft by deception. A jury trial was held on September 15, 2014. Sean Blanke, an employee at the Leavenworth O'Reilly store in November 2012, testified first at trial. He explained that he was familiar with Linaweaver Construction and stated that when the company ordered parts from O'Reilly an employee usually called for parts and had them delivered or would come in to the store and pick them up. Blanke knew that Gauger was an employee of Linaweaver Construction for a short time because Gauger would call and order parts for the company.

Blanke testified that sometime in November 2012 Gauger called and ordered a battery. Blanke asked if Gauger wanted it delivered, but Gauger said he would come in to pick it up. When Gauger came into the store, the order was charged to Linaweaver Construction. Blanke did not have a discussion with Gauger about whether he was authorized to charge the purchase to that account. Blanke testified that he completed a carbon-copy receipt. The store kept a copy and the other copy was given to Gauger.

The State was permitted to introduce into evidence a printed copy of the receipt from this transaction over an objection lodged by the defense based on the best evidence rule. The printed copy of the receipt showed that the transaction took place on

3

November 16, 2012, and that the total charge for the battery was $124.53. There is an illegible signature on the bottom of the receipt, but right above the signature line is a typed copy of the name of the customer signing the receipt. The customer was identified on the printed copy as "Bob." Blanke recalled typing the name Bob because it is short for Robert.

After Moon had her discussion with Mark, she called Blanke and asked him to print off electronic copies of some specific receipts so that she could verify the purchases. Blanke printed electronic copies of the receipts requested by Moon and had the printed copies hand delivered to her. In addition to the receipt discussed above dated November 16, 2012, Blanke testified that he also was instructed to print electronic copies of two other receipts for Moon relating to transactions about which he had no personal knowledge. Electronic copies of the receipts from these other two transactions also were introduced into evidence at trial over Gauger's objection based on the best evidence rule. One of the electronic receipts printed off by Blanke showed a charge to Linaweaver Construction of $119.12 for a battery purchased on November 13, 2012. The customer that signed the receipt was identified on the electronic copy of the receipt as "Robert." The other electronic receipt showed a $123.44 charge to Linaweaver Construction for a battery and a quart of motor oil. The electronic receipt reflected that this transaction occurred on November 14, 2012, and the customer again was identified as Robert.

During Moon's testimony, the State sought to introduce into evidence a copy of the monthly invoice reviewed by Moon that reflected the charges made to Linaweaver Construction's account at O'Reilly in November 2012. The defense objected based on the best evidence rule. When questioned by the court, Moon explained that the original invoice was in her office and the exhibit offered at trial was a duplicate made from the original invoice. Moon explained that the only difference between the original and the copy was that the missing receipts on the original copy were highlighted with a yellow highlighter. Moon offered to bring in the original to show the judge but noted that she

4

would need it back as it was a business record. The district court overruled the objection and allowed the State to introduce the printed invoice—without the yellow highlighting—into evidence. The printed invoice showed, among other things, dates, transaction numbers, some names, and the amount of each charge. The charges shown on the electronic copies of the receipts that already had been introduced into evidence appeared on the monthly invoice.

Alan Arevalo, the manager of the Leavenworth O'Reilly store, also testified at trial. Gauger called Arevalo on two separate occasions to say that he would like to come into the store and "take care of" the purchases he had charged to Linaweaver Construction. Defense counsel objected to this testimony on grounds that neither Gauger nor counsel had ever been told that there was contact between Gauger and Arevalo. Defense counsel also moved for a mistrial, arguing Gauger would be prejudiced if the objection was not sustained because the defense did not have time to adequately prepare for cross-examination in response to Arevalo's testimony. The prosecutor responded to the objection and motion for mistrial by noting that, as alleged by defense counsel, the police reports in the case did not mention any contact between Arevalo and Gauger. The district court denied the motion for a mistrial and thereafter instructed the jury, without objection by the State, to disregard any statements regarding a conversation between Arevalo and Gauger.

Detective Tesh St. John with the Leavenworth Police Department testified he created a photo lineup that included pictures of Gauger and five other individuals with similar characteristics. He showed this lineup to Blanke. Before St. John could even start talking, Blanke identified Gauger as the person who had purchased a battery from him at O'Reilly.

After the State rested, the defense informed the district court that it was not going to present any evidence. During the jury instruction conference, the State requested that

the jury be instructed to consider only the transaction that occurred on November 16, 2012, when determining Gauger's guilt. There was no objection by the defense. The jury found Gauger guilty. The district court sentenced Gauger to a 12-month probation term with an underlying prison sentence of 10 months.

ANALYSIS

1. *The best evidence rule*

Gauger argues that the district court committed reversible error by allowing the State to introduce several documents into evidence at trial over his objections based on the best evidence rule. We review best evidence challenges on appeal for an abuse of discretion. *State v. Robinson*, 303 Kan. __, __ P.3d __, 2015 WL 6829686, at *143 (No. 90,196, filed November 6, 2015). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 106, *cert. denied* 134 S. Ct. 162 (2013).

Relying on the best evidence rule, Gauger lodged objections at trial to the introduction of two exhibits containing copies of three O'Reilly receipts and an exhibit containing a copy of a monthly invoice from O'Reilly. The best evidence rule is codified at K.S.A. 60-467 and states in part:

> "(a) As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds that: (1) If the writing is a telefacsimile communication as defined in subsection (d) and is used by the proponent or opponent as the writing itself, such telefacsimile communication shall be considered as the writing itself; (2) (A) the writing is lost or has been destroyed without fraudulent intent on the part of the proponent, (B) the writing is outside the reach of the court's process and not procurable by the proponent, (C) the opponent, at a time when the writing was under the opponent's control has been notified,

6

expressly or by implication from the pleadings, that it would be needed at the hearing, and on request at the hearing has failed to produce it, (D) the writing is not closely related to the controlling issues and it would be inexpedient to require its production, (E) the writing is an official record, or is a writing affecting property authorized to be recorded and actually recorded in the public records as described in exception (s) of K.S.A. 60-460 and amendments thereto or (F) calculations or summaries of content are called for as a result of an examination by a qualified witness of multiple or voluminous writings, which cannot be conveniently examined in court, but the adverse party shall have had a reasonable opportunity to examine such records before trial, and such writings are present in court for use in cross-examination, or the adverse party has waived their production, or the judge finds that their production is unnecessary."

Based on his claim that the exhibits he challenged at trial were copies of original documents that did not fit into any of the exceptions listed in K.S.A. 60-467, Gauger argues the district court's decision to permit the State to introduce those exhibits into evidence was an error of law and, thus, an abuse of discretion and reversible. Gauger also argues he was deprived of his constitutional right to a fair trial because his conviction rested largely on exhibits that were improperly introduced into evidence.

Relevant to application of the best evidence rule in the context of an electronically stored document is the recent opinion filed by our Supreme Court holding, as a matter of first impression, that any printed version of an e-mail communication may be admitted as the original, provided there is no genuine dispute regarding authenticity. *Robinson*, 2015 WL 6829686, at *143-44. The court's analysis of this issue is instructive:

> "Robinson contends the trial court violated the best evidence rule by admitting numerous e-mails that were forwarded to police rather than printed from the victims' or witnesses' computers. Robinson also challenges exhibits containing e-mail strings rather than individual, segregated messages.
> "The best evidence rule provides that '[a]s tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise

provided in these rules.' K.S.A. 60-467(a). A 'writing' is defined broadly to include every means of recording, upon any tangible thing, any form of communication or representation. K.S.A. 60-401(m). Both parties presume the challenged e-mails constitute 'writings' and were offered to prove their content. We assume, without deciding, the same. *Cf. State v. Schuette*, 273 Kan. 593, 599, 44 P.3d 459 (2002) (caller ID displays not a writing because '[t]he results cannot be printed out or saved on an electronic medium'); *State v. Wilson*, No. 103,749, 2012 WL 718916 (Kan. App. 2012) (unpublished opinion) (assuming 'text messages may be writings subject to the best evidence rule'), *rev. denied* 296 Kan. 1136 (2013); see *State v. Dale*, 293 Kan. 660, 663, 267 P.3d 743 (2011) (best evidence rule applies only when evidence offered to prove content of a writing).

"Generally the best evidence rule requires the original writing be introduced when available. See *State v. Goodwin*, 223 Kan. 257, 258, 573 P.2d 999 (1977) (original required, but secondary evidence admissible where original unavailable). However, when a writing is stored electronically, what constitutes an original and the practicalities of any production are not automatically clear. After all, '[p]roduction of a true original of an email or social networking page is not necessarily possible because both are always electronic.' Pannozzo, *Uploading Guilt: Adding A Virtual Records Exception to the Federal Rules of Evidence*, 44 Conn. L. Rev. 1695, 1708 (2012). K.S.A. 60-467(a) does not squarely address what constitutes an original for best evidence purposes when 'the writing itself' is stored electronically, and we have not had occasion to address the subject previously.

"In the absence of controlling authority, the parties turn to the federal equivalent of our best evidence rule. Like K.S.A. 60-467, the federal rule contemplates that '[a]n original writing . . . is required in order to prove its content' unless otherwise provided by rule or statute. Fed. R. Evid. 1002. More importantly, the federal rule specifically contemplates that '[f]or electronically stored information, "original" means any printout— or other output readable by sight—if it accurately reflects the information.' Fed. R. Evid. 1001(d). This definition is consistent with Federal Rule of Evidence 1003, which provides that '[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.' A 'duplicate' is defined as 'a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original.' Fed R. Evid. 1001(e).

"We regard the federal rule, along with similar state counterparts, as instructive, and we are persuaded by the authority interpreting these provisions. See *Fredricks v. Foltz*, 221 Kan. 28, 30, 557 P.2d 1252 (1976) (finding federal interpretations persuasive where state and federal rules similar). The federal version of the rule is consistent with our prior holdings allowing the use of duplicates or secondary evidence, barring genuine disputes as to fraud or alteration. See, *e.g.*, *Goodwin*, 223 Kan. at 258-59 (defendant's best evidence challenge flawed where he never suggested contents of secondary evidence were less than the truth; absent proof of discrepancy, secondary evidence admissible). Likewise, by excluding printouts of electronically stored information or duplicates where the content is inaccurate, the federal rules further the underlying purpose of the best evidence rule—the prevention of fraud. See *United States v. Yamin*, 868 F.2d 130, 134 (5th Cir.1989) (purpose is to prevent fraud).

"Based on the federal definition of an 'original' and 'duplicate' writing, along with the underlying rule accepting both for best evidence purposes, any printed version of e-mail communications may be admitted as the original, provided there is no genuine dispute regarding authenticity. See *New Image Painting, Inc. v. Home Depot U.S.A., Inc.*, No. SACV 09-1224 AG (RNBx), 2009 WL 4730891, at *2 (C.D. Cal. 2009) (unpublished opinion) (copies of e-mails constitute duplicate originals under Fed. R. Evid. 1003); *Dirickson v. State*, 104 Ark. App. 273, 277, 291 S.W.3d 198 (2009) (printouts of Internet conversations fall within definition of original); *Commonwealth v. Amaral*, 78 Mass. App. 671, 675-76, 941 N.E.2d 1143 (2011) (accepting printed e-mails as best evidence). Courts have found such printouts acceptable for best evidence purposes, even where the e-mails have been forwarded. *Greco v. Velvet Cactus, LLC*, Civ. No. 13-3514, 2014 WL 2943598, at *2-3 (E.D. La. 2014) (unpublished opinion) (text messages converted to e-mail format and forwarded to counsel for printing constituted 'original' for best evidence purposes)." 2015 WL 6829686, at *143-44.

Although the *Robinson* court analyzed the admissibility of electronically stored information under the best evidence rule in the context of an e-mail message, we believe the analysis in *Robinson* is equally applicable to the facts in the present case. Moon testified that she was able to print off any missing invoices from the O'Reilly website, evidence from which a reasonable inference can be made that the receipts were electronically stored. That the invoices were electronically stored is also supported by the

9

testimony of sales associate Blanke, who stated that he was required as part of the sales process to type into the computer the name of the individual purchasing the goods. And it is reasonable to conclude from a review of the copies of the three O'Reilly receipts and the copy of the monthly invoice—which are included in the record on appeal—that all of these documents were printed copies of electronically stored documents. To that end, the invoice contained a note that said:  "Need invoice copies? Go to www.oreillyauto.com/myaccount." Again, this strongly suggests the invoice is electronically stored.

Based on the federal definition of an "original" and "duplicate" writing, along with the underlying rule accepting both for best evidence purposes, we hold that the copies of the three O'Reilly electronically stored receipts and the one O'Reilly electronically stored monthly invoice were properly admitted as originals, given there was no genuine dispute regarding authenticity.

2.  *Jury instruction*

Gauger next argues that the district court erred by instructing the jury that a mistrial would be a burden to the parties, the court, and to taxpayers. Specifically, Gauger challenges the following instruction given to the jury by the district court judge prior to opening statements:

> "You must not engage in any activity or be exposed to information that might unfairly affect the outcome of the case. Any juror who violates these restrictions I've explained to you jeopardizes the fairness of these proceedings, and a mistrial could result. That would require the entire trial process to start over. As you can imagine, a mistrial is an expense and inconvenience to the parties, the Court, and taxpayers."

Gauger concedes that he did not object to the district court's instruction below. Appellate courts review instructional errors occurring at the *close* of evidence and

asserted for the first time on appeal for clear error. See K.S.A. 2014 Supp. 22-3414(3). There is, however, no statute that establishes this court's standard of review for instructional errors in a district court's *preliminary* instructions. Consequently, Gauger argues that the test for clear error is inapplicable to this case because the instruction he challenges was given at the beginning of the trial and because he was not given a chance to object to the instruction outside of the hearing of the jury as required by K.S.A. 2014 Supp. 22-3414(3). Instead, citing *Neely v. Travelers Ins. Co.*, 141 Kan. 691, 42 P.2d 957 (1935), he argues that the instruction constituted reversible error because it was "'insufferably coercive.'"

During the pendency of this appeal, the Kansas Supreme Court decided *State v. Tahah*, 302 Kan. 783, 358 P.3d 819 (2015), which dealt with an instructional issue almost identical to the issue presented in this case. In *Tahah*, the district court instructed the newly impaneled jury at the beginning of the trial that "consideration of outside information could result in a mistrial, which 'is a tremendous expense and inconvenience to the parties, the Court and the tax payers.'" 358 P.3d at 825. Similar to this case, Tahah did not object to the instruction at trial. On appeal, Tahah characterized the issue as one of judicial misconduct and sought de novo review. But our Supreme Court noted that the clearly erroneous standard predated its statutory codification. It found that it had always reviewed unpreserved instructional error claims for clear error no matter when the alleged error occurred during trial. Therefore, it applied the clear error test to Tahah's claim. 358 P.3d at 826. Following *Tahah*, we do the same here.

The test for clear error requires a two-step analysis. First, this court must determine whether there was an error in the instruction, which is a question of law subject to unlimited review. If an error exists, then the court must determine whether reversal is required. To reverse, this court must be firmly convinced that the jury would have reached a different verdict had the error not occurred. This requires a de novo

11

determination based on a review of the entire record. *State v. Armstrong*, 299 Kan. 405, 432-33, 324 P.3d 1052 (2014).

In *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009), the Kansas Supreme Court found that it was erroneous to instruct the jury after both sides had rested that "'[a]nother trial would be a burden on both sides.'" Although this language was, at the time, part of the applicable PIK instruction, the court found that the sentence was misleading and inaccurate because a second trial may be burdensome to some but not all parties to a criminal case. It also found that it was confusing because it conflicted with another instruction that directed jurors not to concern themselves with what happened after they arrived at a verdict. 288 Kan. at 266-67. Although the Supreme Court found that the instruction was given in error, it also ruled that reversal was not required under the second prong of the clearly erroneous test. 288 Kan. at 267.

The *Tahah* court found that *Salts* was inapplicable to the question presented in that case. *Tahah*, 358 P.3d at 827. It noted that the instruction at issue in *Salts* was an *Allen*-type instruction, which is an instruction that encourages the jury to reach a unanimous verdict so as to avoid a mistrial. *Tahah*, 358 P.3d at 826; see *Allen v. United States*, 164 U.S. 492, 501-02, 17 S. Ct. 154, 41 L. Ed. 528 (1896). Our Supreme Court has "a long and justified history of disapproving *Allen*-type jury instructions." *Tahah*, 358 P.3d at 826. This is because an *Allen*-type instruction could be inappropriately coercive. Specifically, it could cause jurors to compromise their own views of the evidence only to avoid a hung jury. 358 P.3d at 827.

The *Tahah* court went on to distinguish the preliminary instruction given at Tahah's trial from the unduly coercive instruction given in *Salts*. It found that the preliminary instruction was not an *Allen*-type instruction because its character and purpose was entirely different. It was given at the beginning of trial and warned that a mistrial could result from the jurors' own misconduct. The Supreme Court found that the

12

prospect of a mistrial due to juror misconduct is equally inconvenient and undesirable for both parties, especially when considering the issue from a pretrial vantage point. It also noted that juror misconduct imposes "grave costs" on the parties and on the integrity of our criminal justice system. Consequently, it found that the instruction was both legally and factually accurate. 358 P.3d at 827.

The instruction at issue here was almost identical to the instruction in *Tahah*. And just like in *Tahah*, it was given as a warning to the jurors against committing misconduct. Therefore, there is nothing to distinguish the issue presented here from the one decided in *Tahah*. This court is duty bound to follow Kansas Supreme Court precedent absent some indication the court is departing from its previous position. *State v. Ruiz*, 51 Kan. App. 2d 212, 233, 343 P.3d 544 (2015). Under *Tahah*, the instruction challenged here was both legally and factually appropriate. Therefore, Gauger's claim fails.

Affirmed.