NOT DESIGNATED FOR PUBLICATION

No. 113,817

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL L. LANKFORD,
*Appellant.*


MEMORANDUM OPINION


Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed September 2, 2016. Vacated and remanded with directions.

*Adam D. Stolte*, of Stolte Law, LLC, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.


LEBEN, J.: Daniel Lankford appeals the district court's summary denial of his motion to correct an illegal sentence. He argues that the district court's classification of his 1983 Kansas burglary adjudication as a person felony was unconstitutional under *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), as those cases were applied by the Kansas Supreme Court in *State v. Dickey*, 301 Kan. 1018, 1036-40, 350 P.3d 1054 (2015). Lankford asserts that this misclassification increased his

criminal-history score and made his sentences illegal, a mistake he says the court can correct under K.S.A. 22-3504.

The State argues that we shouldn't reach the merits of Lankford's claim for procedural reasons but agrees that if we reach the issue on its merits, Lankford's point is correct based on *Dickey.* We have reviewed each of the procedural hurdles that Lankford must overcome and have concluded that none of them bar consideration of his claim on the merits. Based on *Dickey*, we conclude that the criminal-history score used in Lankford's sentencing was incorrect, and we remand for resentencing with a corrected criminal-history score.

FACTS AND PROCEDURAL BACKGROUND

In December 2011, Lankford pled guilty to burglary of a residence and theft. Before a defendant convicted of a felony in Kansas is sentenced, a presentence report is prepared summarizing the defendant's criminal history. That's because most felony sentences are determined by a sentencing grid that considers the severity level of the crime (set by statute) and the defendant's criminal history. A defendant's criminal-history score increases based on how many of his or her past convictions, including out-of-state convictions and juvenile adjudications, were felonies and person offenses. See K.S.A. 2015 Supp. 21-6809 (three or more person felonies results in a criminal-history score of "A," two results in a criminal-history score of "B," and one results in a "C" or "D"); K.S.A. 2015 Supp. 21-6804 (non-drug-offense sentencing grid); K.S.A. 2015 Supp. 21-6805 (drug-offense sentencing grid).

Person offenses are usually crimes that may inflict physical or emotional harm to another person, whereas crimes that damage property are generally designated as nonperson offenses. *State v. Keel*, 302 Kan. 560, 574-75, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). Before 1993, Kansas criminal statutes and sentencing laws

2

did not distinguish between person and nonperson offenses, but since then, most statutes specify whether the crime is a person or nonperson offense. To classify pre-1993 Kansas convictions or adjudications as person or nonperson offenses for criminal-history purposes, the sentencing court compares the prior-conviction statute with the comparable statute in effect at the time the current crime of conviction was committed. 302 Kan. at 573-76, 580-81. For burglary, in particular, past convictions are treated as person felonies if they involved a dwelling but are treated as nonperson felonies if they were committed somewhere other than a dwelling. K.S.A. 2015 Supp. 21-6811(d); see also K.S.A. 2015 Supp. 21-5807. A dwelling is defined as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 2015 Supp. 21-5111(k).

In Lankford's case, the district court found that Lankford had a criminal-history score of "B," based in part on a 1983 Kansas juvenile adjudication for burglary. The presentence investigation report labeled the adjudication as "Burglary (Residence)" and classified it as a person felony. Lankford did not challenge his criminal-history score before the district court.

Based on that criminal history and the severity level of the crime, Lankford's 2011 burglary conviction would warrant a sentence of 27, 29, or 31 months under the Kansas Sentencing Guidelines. The district court sentenced him to 31 months for the burglary conviction and 7 months for the theft conviction—with the sentences running one after another for a total sentence of 38 months—but granted Lankford's request to be placed on probation. Not long after sentencing, Lankford violated the terms of his probation and was ordered to serve a modified sentence of 28 months in prison. The record does not indicate that Lankford filed a direct appeal.

In June 2013, the State charged Lankford with aggravated escape after he left the Wichita Work Release Facility, where he was serving his prison sentence. As part of a

3

plea agreement with the State, Lankford pled guilty to the charge. The district court again found that he had a criminal-history score of "B," and Lankford did not object. Lankford's guideline sentencing range for the aggravated-escape conviction was 114, 120, or 128 months. See K.S.A. 2015 Supp. 21-6804; K.S.A. 2015 Supp. 21-5911(b)(1)(G); K.S.A 2015 Supp. 21-5911(c)(2)(B). But the district court chose to grant Lankford's request for a shorter sentence and sentenced him to 60 months in prison to run after he had served his time in the other case.

In February 2015, Lankford filed a motion to correct an illegal sentence for both cases, arguing that his criminal-history score had been incorrectly calculated under *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). He also filed another motion to correct an illegal sentence, this time arguing that his criminal-history score had been incorrectly calculated under *State v. Dickey*, 50 Kan. App. 2d 468, 329 P.3d 1230 (2014), *aff'd* 301 Kan. 1018, 350 P.3d 1054 (2015). The State responded that *Murdock*, *Dickey*, and *Descamps* did not apply to Lankford's case and urged the district court to deny the motions. Ultimately, the district court concluded that the matter was properly before it but denied the motions without a hearing.

Lankford has appealed to this court. On appeal, since the opinion favorable to Lankford in *Murdock* has since been overruled, Lankford proceeds only on his arguments under *Dickey*, *Apprendi*, and *Descamps*.

ANALYSIS

Lankford argues that the district court wrongly calculated his criminal-history score, resulting in an illegal sentence, because it classified his 1983 burglary adjudication as a person felony rather than a nonperson felony.

Before we discuss the State's procedural objections to considering Lankford's motion on its merits, we must set out some background about motions seeking to correct an "illegal sentence," a term that has specific meaning in Kansas law. Under K.S.A. 22-3504, a court may correct an illegal sentence at any time. The Kansas Supreme Court has strictly defined "illegal sentence," and a sentence is illegal only if it fits within one of three categories: (1) it is imposed by a court without jurisdiction; (2) it doesn't conform to the applicable statutory provision, either in the character or term of the authorized punishment; or (3) it is ambiguous about the time or manner in which it is to be served. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016); *State v. Donaldson*, 302 Kan. 731, 733-34, 355 P.3d 689 (2015); *Makthepharak v. State*, 298 Kan. 573, 578, 314 P.3d 876 (2013). Whether a sentence is illegal is a question of law, which we review independently, with no required deference to the district court. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016).

Because "illegal sentence" is strictly defined, as a general rule, defendants may not file a motion to correct an illegal sentence based on constitutional challenges. See, *e.g.*, *State v. Warrior*, 303 Kan. 1008, 1010, 368 P.3d 1111 (2016) (holding constitutional challenge to sentencing procedures could not be raised in a motion to correct an illegal sentence); *State v. Mitchell*, 284 Kan. 374, 376-77, 162 P.3d 18 (2007) (determining district court did not have jurisdiction to consider defendant's constitutional claims brought in motion to correct an illegal sentence). But the Kansas Supreme Court has allowed defendants to use K.S.A. 22-3504 to challenge their criminal-history scores based on constitutional claims because these challenges satisfy the second definition of an illegal sentence: if the criminal-history score is incorrect, the resulting sentence wouldn't comply with the sentencing statutes. See *State v. Luarks*, 302 Kan. 972, 975-77, 360 P.3d 418 (2015); *Dickey*, 301 Kan. at 1034 (citing *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 [2011]).

The State first argues that we lack jurisdiction under K.S.A. 22-3504 because Lankford is challenging his sentences on constitutional grounds and a motion to correct an illegal sentence cannot be used to raise constitutional claims. But as the State concedes, *Dickey* held that a constitutional challenge that impacts a defendant's criminal-history score can be raised under K.S.A. 22-3504(1) because "such a challenge essentially raises a claim that the sentence imposed does not conform with the applicable statutory provision regarding the term of punishment authorized for the current conviction." 301 Kan. at 1034 (citing *Neal*, 292 Kan. at 631); see also *State v. Vasquez*, 52 Kan. App. 2d 708, 714-17, 371 P.3d 946 (2016) (distinguishing claim that a sentencing statute is unconstitutional from a claim that a constitutional error caused an inaccurate criminal-history score and illegal sentence). The State contends that *Dickey* and *Neal* were wrongly decided, but we are duty bound to follow Kansas Supreme Court precedent without some indication that the Supreme Court is departing from its previous position. *State v. Gauger*, 52 Kan. App. 2d 245, 255, 366 P.3d 238 (2016); see also *Luarks*, 302 Kan. at 975 (citing *Dickey* as grounds to consider defendant's challenge to classification of past convictions). We have jurisdiction to consider Lankford's claim.

The State raises two other procedural objections to Lankford's appeal. First, the State argues that because Lankford failed to raise this issue in his direct appeal, the legal doctrine called res judicata prevents him from raising it now. Second, the State argues that *Dickey* cannot be applied to cases in which a defendant's sentence has become final (either because the defendant didn't appeal it or lost an initial, direct appeal).

We begin with the State's res judicata argument, which presents a purely legal question that we review independently, without any required deference to the district court's conclusion. *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013); *State v. Martin*, 52 Kan. App. 2d 474, 479, 369 P.3d 959 (2016), *petition for rev. filed* May 5, 2016. "Res judicata" is a Latin phrase that means "a thing adjudicated." Black's Law Dictionary 1504 (10th ed. 2014). As a legal doctrine, it prevents a person from raising a

6

particular claim again after the court has already ruled on it or from raising a claim that could have been raised in a previous case but wasn't. *Robertson*, 298 Kan. at 344; *State v. Martin*, 294 Kan. 638, 640-41, 279 P.3d 704 (2012).

But the plain language of K.S.A. 22-3504 creates an exception to res judicata because it authorizes a court to "correct an illegal sentence *at any time*." (Emphasis added.) Our Supreme Court recognized this exception in *Neal*. In that case, the defendant brought a motion to correct an illegal sentence 7 years after his direct appeal, arguing his criminal-history score was incorrect because the district court had improperly counted his past misdemeanor convictions as a single person felony. The court held that because a motion to correct an illegal sentence could be filed at any time, the motion was not barred by res judicata. 292 Kan. at 631 ("[A] motion to correct illegal sentence is not subject to our general rule that a defendant must raise all available issues on direct appeal."). See also *Vasquez*, 52 Kan. App. 2d at 713 (applying *Neal* to find defendant's motion to correct an illegal sentence not barred by res judicata); *State v. Blake*, No. 113,427, 2016 WL 2772899, at *4 (Kan. App. 2016) (unpublished opinion) ("[I]f defendants' claims fit within the definition of an illegal sentence under K.S.A. 22-3504[1], then those defendants may raise their claims at any time regardless of their ability to raise such arguments in a prior appeal."). As our court said in *Martin*, "Applying the doctrine of res judicata to bar challenges of an illegal sentence merely because they could have been brought in a direct appeal would undermine the clear statutory directive in K.S.A. 22-3504(1) that courts may correct an illegal sentence at any time." 2016 WL 852130, Syl. ¶ 5.

In its brief, the State relies on general language from *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 (2000), where our Supreme Court said that a motion to correct an illegal sentence "may not be used as a vehicle to breathe new life into appellate issues previously abandoned or adversely determined." In that case, however, the basis for the motion to correct illegal sentence was much different than the argument Lankford makes.

7

In *Johnson*, the defendant argued that his sentence was illegal based on the State's alleged violation of the plea agreement. The *Johnson* court held that the claim did not fit within the definition of an illegal sentence and recognized that the defendant had raised the issue in prior appeals, thus barring it from further litigation under res judicata principles. 269 Kan. at 601. The cases in which Kansas appellate courts have applied res judicata to motions to correct an illegal sentence involve claims that were previously resolved by the court or claims that would not fall within the definition of an illegal sentence. See *Martin*, 52 Kan. App. 2d at 480 (listing cases). Here, because Lankford's challenge to his criminal-history score fits within the parameters of an illegal-sentence challenge under K.S.A. 22-3504(1), his claim is not barred by res judicata.

The State next argues that Lankford can't bring his claim because *Dickey* doesn't apply retroactively to cases that became final before the Supreme Court issued the *Dickey* opinion. In other words, the State contends that *Dickey* doesn't apply to collateral actions, which are legal actions (like a motion to correct an illegal sentence) brought after the defendant's conviction and sentence have become final—which happens when a defendant either chooses not to appeal his conviction and sentence or when the defendant's initial, direct appeal is concluded. As a general rule, when an appellate court decision changes the law, that change applies going forward and applies only to cases that are pending on direct review or not yet final when the decision is issued. *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013). But the court's holding in *Dickey* isn't a change in the law; it's an application of a constitutional rule announced many years earlier in *Apprendi*. *Vasquez*, 52 Kan. App. 2d at 713 (citing *Dickey*, 301 Kan. at 1021). Therefore, the relevant date for retroactivity purposes is the date *Apprendi* was decided— June 26, 2000. *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001); *Vasquez*, 52 Kan. App. 2d at 713-14; *Martin*, 52 Kan. App. 2d at 484. Lankford's cases arose in 2011 and 2013, long after *Apprendi* had been decided. Thus, applying *Dickey* in Lankford's cases is not an improper retroactive application of that law. See, *e.g.*, *State v. Hadley*, No. 113,371, 2016 WL 1546020, at *4-5 (Kan. App. 2016) (unpublished opinion).

Although not clearly set out as a separate argument, the State also suggests that because Lankford originally bargained for and received lower sentences than are standard for his crimes, we should not consider his illegal-sentence claim or apply *Dickey* to his case. The State cites no direct, clear support for its arguments. If Lankford's burglary adjudication is reclassified as a nonperson felony, his criminal-history score will be a "C." With that criminal-history score, the standard sentencing range for his 2011 burglary conviction would be 25, 27, or 29 months; likewise, the standard sentencing range for the aggravated escape would be 53, 57, or 60 months. Thus, the State is correct that Lankford could conceivably receive longer sentences than he received before, but that does not prohibit Lankford from raising his claim of an illegal sentence. In fact, our Supreme Court has said that appellate courts have jurisdiction to correct an illegal sentence even if the defendant's sentence was the result of a plea agreement. *State v. Quested*, 302 Kan. 262, Syl. ¶ 1, 352 P.3d 553 (2015). And a court can correct an illegal sentence at any time, even if it results (or could result) in a higher sentence for the defendant. See *State v. McCarley*, 287 Kan. 167, 175, 195 P.3d 230 (2008) (holding that the State can challenge a sentence as illegal even if it results in a more severe sentence for the defendant). The fact that Lankford's original bargained-for sentences are similar to or lower than the presumptive ranges that will apply on resentencing simply isn't relevant to whether his sentences are illegal.

In sum, Lankford is not procedurally barred from bringing his claim.

We turn then to the merits—whether the district court properly classified Lankford's 1983 conviction as a person felony. The question is one of law, which we review independently, without any required deference to the district court. *State v. Cordell*, 302 Kan. 531, 533, 354 P.3d 1202 (2015).

While the State has essentially conceded the merits issue, we will briefly explain why Lankford's point is well taken. Lankford asserts that his 1983 Kansas burglary adjudication should have been scored as a nonperson felony based on *Dickey*. In *Dickey*, the defendant pled guilty to felony theft, and in determining his criminal-history score, the district court scored his 1992 Kansas juvenile adjudication for burglary as a person felony. 301 Kan. at 1021-22. On appeal, Dickey challenged the classification, arguing that it violated his Sixth Amendment rights under *Descamps* and *Apprendi*.

In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Descamps* applied consistent principles to a federal sentencing scheme when it described how sentencing courts should compare prior-conviction statutes to generic offenses when determining whether the prior conviction was a violent felony that would increase a defendant's sentence under the federal Armed Career Criminal Act. 133 S. Ct. at 2281, 2288. Under *Descamps*, when determining sentence enhancements under the Armed Career Criminal Act, a federal sentencing court compares the elements of the relevant statutes and should not generally consider the actual facts of the prior conviction because doing so may result in the sentencing court finding facts that increase the sentence but were not proven by a jury beyond a reasonable doubt. 133 S. Ct. at 2281-82.

In *Dickey*, the burglary statute in effect when Dickey committed his prior burglary didn't require evidence that the burglarized structure was a dwelling. Our Supreme Court explained that when the district court determined that Dickey's prior burglary adjudication had involved a dwelling, the court necessarily "ma[de] or adopt[ed] a factual finding [*i.e.*, that the burglary involved a dwelling] that went beyond simply identifying the statutory elements that constituted the prior burglary adjudication." 301 Kan. at 1039. The court concluded that classifying Dickey's burglary adjudication as a person felony violated his constitutional rights to have a jury determine all facts other than the mere

10

existence of a past conviction. Thus, the *Dickey* court held that his burglary adjudication should have been classified as a nonperson felony for criminal-history purposes. 301 Kan. at 1039-40.

Here, just like in *Dickey*, the burglary statute in effect in 1983 didn't include a "dwelling" element. It defined burglary as "knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein." K.S.A. 21-3715 (Ensley 1981). In order to classify Lankford's 1983 adjudication as a person felony, the district court necessarily found that the adjudication involved a "dwelling," which was not proven by a jury beyond a reasonable doubt; in doing so, the court violated Lankford's constitutional rights under *Apprendi*. See *Dickey*, 301 Kan. at 1039-40. Thus, under *Dickey*, Lankford's 1983 burglary adjudication should have been classified as a nonperson felony; his criminal-history score is therefore incorrect, and his sentences are illegal.

Because we find that Lankford's sentences are illegal under *Dickey*, we vacate his sentences and remand to the district court with directions to reclassify the 1983 burglary adjudication as a nonperson offense and resentence him accordingly.