NOT DESIGNATED FOR PUBLICATION

No. 118,160

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANE LARON TAYLOR,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed February 1, 2019.
Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., HILL and SCHROEDER, JJ.


PER CURIAM: Dane Laron Taylor appeals his convictions for aggravated robbery, three counts of aggravated assault with a deadly weapon, possession of THC with the intent to distribute, and two counts of possession of drug paraphernalia with the intent to use to distribute. He claims the district court erred when it admitted a screenshot from security camera footage that had been brightened. He argues the altered screenshot violated the best evidence rule since the original screenshot was not admitted into evidence for the jury to consider with the brighter version. Taylor also claims the prosecutor committed error by telling the jury it had no right to jury nullification during

voir dire, misstated evidence, and vouched for officers' credibility during closing arguments. We find no reversible error and affirm.

FACTS

Following the robbery of a Topeka Kwik Shop on August 29, 2016, the State charged Taylor with aggravated robbery, six counts of aggravated assault with a deadly weapon, and criminal possession of a firearm. Two weeks before his jury trial, the State moved to amend the complaint to include possession of tetrahydrocannabinols (THC) with intent to distribute and two counts of possession or use of drug paraphernalia with intent to distribute a controlled substance.

At the hearing on the motion to amend, Taylor argued the amendment would substantially prejudice him because he believed the State had not intended to pursue those charges since the State had the evidence from the beginning of the case. He also argued he would not have a chance to conduct testing. Taylor objected to the State charging possession of THC with intent to distribute instead of possession of marijuana with the intent to distribute. Nonetheless, the district court granted the motion to amend.

The trial started two weeks later. During voir dire, the prosecutor explained the jury's duty to apply the instructions given by district court. He continued, telling the jury:

> "But in the event you read some instruction and you think, you know what, I don't like that for whatever reason, I didn't know that that was the law, and I don't like it and I don't want to apply it, well, you don't have that right. The law that the Judge gives you, you're going to take an oath that you're going to apply the law, all right? The facts as you find them will be up to you, but the law that is given to you, you have to follow as instructed by the Judge."

Taylor did not object to the prosecutor's statement.

2

Because Taylor does not challenge the sufficiency of the evidence against him, it is unnecessary to explain in detail the evidence presented against him during his weeklong trial. Highly summarized, the State presented evidence a black male entered a Topeka Kwik Shop around 11 p.m. with a gun, told the patrons to get down, took the cash register till, and fled on foot. Without objection, the State admitted security camera footage of the robbery showing the robber was a black male with a tattoo on his hand.

Officer Joshua Miller testified he was a certified K-9 handler and was on patrol with his police service dog, Rio, on August 29, 2016. He received a dispatch over his radio about an aggravated robbery at a Kwik Shop near his location. Miller testified he and Rio began tracking from the southeast corner of the parking lot eastbound to Humboldt and turned northbound on Humboldt. Rio led Miller across a pedestrian footbridge to Girard before Rio turned south on Girard. Rio led him behind a house toward a car parked behind the house. Other officers were already at this address investigating a reckless driving call—a vehicle had driven over the pedestrian footbridge—that had been reported in the area. Rio continued toward a tree-lined area where officers were using flashlights and a cash register till had been found. The district court admitted Miller's bodycam footage.

The video showed a difference in Rio's behavior a few houses down Humboldt. Miller interpreted this as the track changing. He noted the suspect could have gotten into some other means of transportation—or simply changed shoes—and it would have changed the track. On cross-examination, Miller admitted Rio did not often track cars, but reiterated Rio tracked ground disturbance. Miller testified Rio could be tracking ground disturbance—whether left by a person, bicycle, or car, Miller could not say.

Detective Jared Strathman testified he reviewed the store's security camera video when he arrived at the scene. He observed what appeared to be a tattoo on the robber's hand that came to a point near the thumb. After he left the store, he went to the Girard

3

Street address—which belonged to Taylor's grandmother—and discovered the vehicle behind the house belonged to Taylor. Using Facebook, Strathman searched for Taylor and saw a picture of Taylor, a black male, with a tattoo running down his arm and coming to a point at his thumb.

The State moved to admit Exhibit 27, a screenshot from the admitted security camera footage. Taylor objected to its admission, arguing the screenshot had been altered by increasing its brightness. He also argued there was an original of the screenshot, and the State could use the original, but Exhibit 27 had been altered. Strathman testified he used Microsoft Word to brighten the image. He also believed he adjusted the sharpness or the contrast but did not alter the contents of the picture in any way. The district court ultimately admitted Exhibit 27.

During closing arguments, the prosecutor told the jury:

> "And you saw on [Miller's] video that police are already there. Well, how did they know to go there? They weren't necessarily looking for the robber, because remember, the calls that came in and radio traffic, there was a report at that time of an erratic or reckless driver, possibly in a gold Camry, that had gone on Girard and went behind a house there. So you have a different group of officers kind of responding to that situation, which· matches up where the K-9 ends up. It starts making some sense that these two things may be linked. *They didn't make this stuff up.*
>
>      . . . .
>
> "And, remember, it was in the radio traffic or one of the 911 calls where they said they saw someone jump in a car, this gold or tan Camry, on Humboldt, and take off. Jump in a car. *That is consistent with what Officer Miller and Rio were able to determine when they were tracking on Humboldt, that that change of disturbance into the street is consistent with somebody jumping in a car.* Again, Officer Miller didn't know any of that information when Rio was doing what Rio does, he's just following what Rio does."
> (Emphases added.)

Taylor did not object to the prosecutor's comments.

The jury convicted Taylor of aggravated robbery, three counts of aggravated assault with a deadly weapon, criminal possession of a firearm, possession with the intent to distribute THC, and two counts of possession of drug paraphernalia with the intent to use to distribute.

ANALYSIS

*Exhibit 27 does not violate the best evidence rule.*

Taylor argues the district court erred when it admitted Exhibit 27, a still frame photograph from the security camera video, because the still frame photograph had been altered and the State did not admit the original into evidence as well. On appeal, we review best evidence challenges for an abuse of discretion. *State v. Gauger*, 52 Kan. App. 2d 245, 249, 366 P.3d 238 (2016), *rev. denied* 305 Kan. 1254 (2017). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In Kansas, the best evidence rule is codified in K.S.A. 60-467, which states:

"(a) As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds that: (1) If the writing is a telefacsimile communication as defined in subsection (d) and is used by the proponent or opponent as the writing itself, such telefacsimile communication shall be considered as the writing itself; (2) (A) the writing is lost or has been destroyed without fraudulent intent on the part of the proponent, (B) the writing is outside the reach of the court's process and not procurable by the proponent, (C) the opponent, at a time when the writing was under the opponent's control has been notified, expressly or by implication from the pleadings, that it would be needed at the hearing,

5

and on request at the hearing has failed to produce it, (D) the writing is not closely related to the controlling issues and it would be inexpedient to require its production, (E) the writing is an official record, or is a writing affecting property authorized to be recorded and actually recorded in the public records as described in exception (s) of K.S.A. 60-460 and amendments thereto or (F) calculations or summaries of content are called for as a result of an examination by a qualified witness of multiple or voluminous writings, which cannot be conveniently examined in court, but the adverse party shall have had a reasonable opportunity to examine such records before trial, and such writings are present in court for use in cross-examination, or the adverse party has waived their production, or the judge finds that their production is unnecessary."

The State contends Taylor did not allege a violation of the best evidence rule before the district court and thus did not preserve the issue for review. The State argues Taylor never mentioned the words "best evidence rule" and contends Taylor argued the picture was unreliable, not that it violated the best evidence rule.

The State's argument is unpersuasive. While Taylor objected to Exhibit 27 based on a lack of foundation, he also told the district court, "I know there's an original out there, and that's not the original." Although Taylor mainly objected to Exhibit 27 based on a lack of foundation, he also objected based on the best evidence rule. Thus, the issue was preserved for review. We will address the merits of Taylor's argument.

The best evidence rule applies only when the challenged evidence is introduced to prove the content of a writing. *State v. Dale*, 293 Kan. 660, 663, 267 P.3d 743 (2011). At first glance, it does not appear the best evidence rule applies here as the still picture taken from the video of the store robbery is not a writing. "Writing" includes "handwriting, typewriting, printing, photostating, photographing and every other means of recording upon any tangible thing any form or communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof." K.S.A. 60-401(m).

6

However, we must follow our Supreme Court and it has expanded writing to include a video. See *Dale*, 293 Kan. at 662-63.

In *Dale*, the defendant challenged the admission of a slow motion version of the patrol-car video. The Kansas Supreme Court affirmed, concluding "that because the best evidence, *i.e.*, the original video, already had been admitted at trial and the modified video was not introduced to prove or disprove the content of the video, the video's admission did not violate the best evidence rule." 293 Kan. at 661.

The parties agree *Dale* controls, but they disagree on what constitutes the "original." The State contends the original is the security camera video admitted into evidence. While Taylor acknowledges the security camera video was admitted into evidence, he contends the original is the unaltered still frame. It does not appear Kansas courts have addressed whether the video or unaltered still frame is the original.

However, in *Hurst v. State*, No. 10-13-000113-CR, 2013 WL 5526226 (Tx. App. 2013) (unpublished opinion), the Texas Court of Appeals implicitly addressed this issue. In *Hurst*, the defendant was charged with tampering with physical evidence after he tried to drop evidence of drugs during a traffic stop. The district court admitted an officer's dash-cam video without objection. The State also attempted to admit still photographs taken from the dash-cam video. The photographs had boxes on portions of the photographs showing the offense which were intended to help the jury focus on the acts constituting the offense. Hurst objected based on the best evidence rule, the district court overruled the objection, and the photographs were admitted into evidence. The jury found Hurst guilty and he appealed. On appeal, the Texas Court of Appeals found Hurst's argument was unpersuasive because the best evidence was the dash-cam video. 2013 WL 5526226, at *2.

7

Here, Strathman testified Exhibit 27 was a still image taken from the security video already admitted at trial. Although Strathman modified the image to adjust the brighness, the sharpness, or contrast, the best evidence rule did not apply because the original—the security camera video—had already been admitted. The admission of Exhibit 27 did not violate the best evidence rule. Exhibit 27 was properly admitted by the district court over Taylor's objection.

*The prosecutor did not commit error.*

Taylor contends the State committed reversible prosecutorial error in both voir dire and in closing arguments. First, he argues the prosecutor misstated the law on jury nullification during voir dire. Second, he asserts the prosecutor both misstated Miller's testimony and vouched for his credibility. In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), the Kansas Supreme Court revamped the concept of and standard of review for "prosecutorial misconduct." Under the modified *Sherman* standard, the appellate court uses a two-step process to evaluate claims of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need

8

only address the higher standard of constitutional error.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

A claim of prosecutorial error based on comments made during voir dire, opening statements, or closing argument (that are not evidence) will be reviewed on appeal even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012).

*Jury nullification*

Taylor first argues the prosecutor committed error by misstating the law on jury nullification during voir dire. Jury nullification is:

> "'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' [Citation omitted.]" *Silvers v. State,* 38 Kan. App. 2d 886, 888, 173 P.3d 1167 (2008).

Although jurors have a duty to accept the rules of law given them in the instructions, apply those rules in determining what facts are proven, and render a verdict based on the law, jurors have "the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant." *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973). In *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014), the Kansas Supreme Court held jury instructions cannot forbid a jury from exercising its power of nullification. "A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

During voir dire, the prosecutor told the potential jurors:

9

"But in the event you read some instruction and you think, you know what, I don't like that for whatever reason, I didn't know that that was the law, and I don't like it and I don't want to apply it, well, *you don't have that right*. The law that the Judge gives you, you're going to take an oath that you're going to apply the law, all right? The facts as you find them will be up to you, but the law that is given to you, you have to follow as instructed by the Judge." (Emphasis added.)

The State contends there is no law that permits jury nullification and, as a result, the prosecutor did not misstate the law. This argument is persuasive. Although the jury has the power of nullification, it has no right to jury nullification. See *United States v. Davis*, 724 F.3d 949, 954 (7th Cir. 2013); *State v. Trotter*, No. 114,743, 2017 WL 3668908, at *3 (Kan. App. 2017) (unpublished opinion) (while "jurors have the unchecked power to acquit a defendant in defiance of clear-cut law and overwhelming evidence of guilt . . . they have no legal right to exercise it"), *rev. denied* 307 Kan. 993 (2018). Since juries have only the power of nullification and not the right to nullification, the prosecutor did not misstate the law when he told the jury it did not have the right to disregard the law.

*Misstating officer's testimony.*

Taylor contends the prosecutor's closing arguments also fell outside the wide latitude afforded prosecutors. He asserts the prosecutor erred when he misstated the evidence. "A prosecutor commits error by misstating the evidence, even when the misstatement is accidental or inadvertent." *State v. Sturgis*, 307 Kan. 565, 570, 412 P.3d 997 (2018). Taylor complains the prosecutor misstated the evidence when he told the jury:

"And, remember, it was in the radio traffic or one of the 911 calls where they said they saw someone jump in a car, this gold or tan Camry, on Humboldt, and take off. Jump in a car. *That is consistent with what Officer Miller and Rio were able to determine when they were tracking on Humboldt, that that change of disturbance into the street is*

10

*consistent with somebody jumping in a car*. Again, Officer Miller didn't know any of that information when Rio was doing what Rio does, he's just following what Rio does." (Emphasis added.)

Taylor contends Miller's testimony cannot support the prosecutor's assertion. However, the prosecutor did not misstate the facts; he made a reasonable inference based on the evidence. This is permissible. See *Sturgis*, 307 Kan. at 569. Miller testified Rio's track "changed" on Humboldt. He indicated the change meant the tracked individual "had gotten into some other means of transportation" and specifically identified both cars and bicycles as possibilities. While Miller testified Rio did not often track cars, he clarified Rio was trained to track ground disturbance. Miller testified Rio could be tracking ground disturbance—whether left by a person, bicycle, or car, Miller could not say.

The prosecutor did not misstate Miller's testimony. As a result, the prosecutor did not commit error. Taylor is entitled to no relief on this claim.

*Vouching for officer.*

Taylor also contends the prosecutor erred by vouching for law enforcement officers' credibility when he told the jury:

> "And you saw on his video that police are already there. Well, how did they know to go there? They weren't necessarily looking for the robber, because remember, the calls that came in and radio traffic, there was a report at that time of an erratic or reckless driver, possibly in a gold Camry, that had gone on Girard and went behind a house there. So you have a different group of officers kind of responding to that situation, which matches up where the K-9 ends up. It starts making some sense that these two things may be linked. *They didn't make this stuff up.*" (Emphasis added.)

We agree with the rule prosecutors may not offer juries their personal opinions about the credibility of witnesses. However, prosecutors have wide latitude to craft

11

arguments that include reasonable inferences to be drawn from the evidence, including explaining to juries what they should look for in assessing witness credibility. *State v. Sean*, 306 Kan. 963, 979, 399 P.3d 168 (2017). This court does not view a prosecutor's comments in isolation but in context. *State v. Duong*, 292 Kan. 824, 831, 257 P.3d 309 (2011).

Taylor argues the prosecutor erred because he vouched for the credibility of the witnesses by stating, "They didn't make this stuff up." The State contends Taylor ignores the statement's context to argue the prosecutor improperly bolstered the witnesses' credibility. It asserts the argument was a proper comment on the evidence.

Though the argument is not entirely clear, the prosecutor seems to be referencing Miller and Rio when he says, "They didn't make this stuff up." In context, the prosecutor is simply suggesting Rio's track led him to the Girard address and Taylor's vehicle instead of Rio losing the track and leading Miller to a random location. This was a reasonable inference based on the evidence; Rio followed a track from the Kwik Shop to Taylor's grandmother's house and his car. Even if, however, this was not fair comment on the evidence, the error was harmless.

Prosecutorial error is harmless if the State can show "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109. Here, there was overwhelming evidence to suggest Taylor committed the crime. First, the security camera footage clearly shows the robber was a black male with a tattoo; Taylor's tattoo appears to match. Second, police officers recovered the till near Taylor's car, behind his grandmother's house. Third, Taylor admitted to selling marijuana and the KBI lab technician, Beth Royel, confirmed the vegetation contained THC. There is no reasonable possibility the prosecutor's brief, somewhat confusing statement during his closing argument, contributed to the verdict.

12

*No abuse of discretion to allow the State to amend the complaint two weeks before trial.*

Taylor's final argument claims the district court erred when it allowed the State to amend the complaint two weeks before trial to add more charges. This court reviews a district court's decision to allow an amendment to a complaint for an abuse of discretion. *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Marshall*, 303 Kan. at 445. The party asserting the trial court abused its discretion bears the burden of showing the abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

K.S.A. 22-3201(e) allows for a complaint "to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." In *Bischoff*, the Kansas Supreme Court held "the charging of a different crime may be allowed by an amendment to the complaint before trial provided the substantial rights of the defendant are not prejudiced." 281 Kan. at 205.

Taylor asserts his substantial rights were prejudiced for two reasons. First, he argues the State violated his right to trial without undue delay because it knew at the beginning of the case Taylor possessed marijuana with the intent to distribute. He contends "no reasonable person would have allowed the State to sit on the evidence through one continuance" and amend the charges less than two weeks before trial. Taylor also argues the State deprived him of his right to present a complete defense because he did not have sufficient time to investigate the new charges against him.

Taylor's first argument is unpersuasive. His preliminary hearing and arraignment occurred on November 3, 2016. His trial began April 17, 2017—only 165 days later. The amendment did not deny Taylor his right to a trial without delay. Further, the motion to

amend the complaint indicates the State received the results indicating the presence of THC on March 31, 2017, and the motion was filed four days later. A reasonable person could agree to allow the State to amend the complaint four days after receiving the test results.

Taylor's second argument is also unpersuasive. While Taylor argued he would have done independent testing of the sample, he also admitted the vegetation was marijuana. THC is a chemical compound in marijuana. The KBI lab technician, Royel, testified she could not identify the vegetation as marijuana. But in the sample provided, she was able to find THC. Since marijuana contains THC, and Taylor admitted the vegetation was marijuana, it is unclear from his brief what he hoped to obtain through additional testing.

Taylor also conducted a 32-page voir dire before the district court admitted the laboratory report. During voir dire, he questioned Royel about the accuracy of the instruments and the policy of how marijuana is examined.

The State did not deny Taylor the right to a trial without undue delay; his trial began 165 days after the preliminary hearing and his arraignment on the same day. Similarly, Taylor did not explain what he hoped to accomplish with additional testing and he conducted an extensive voir dire before the laboratory report was admitted. Taylor has not shown the district court abused its discretion when it granted the motion to amend the complaint because he has not shown he was prejudiced by the State's request to amend two weeks before trial to add the THC and drug paraphernalia-related charges.

Affirmed.