No. 48,852

STATE OF KANSAS, *Appellee,* v. MARCUS GOODWIN, JR., a/k/a "CHICAGO", *Appellant.*

(573 P.2d 999)

Opinion filed December 10, 1977.

*Timothy J. Evans,* of Kansas City, Kansas, argued the cause and was on the brief for the appellant.

*Thomas L. Boeding,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant was found guilty of aggravated robbery (K.S.A. 21-3427) and aggravated burglary (K.S.A. 21-3716) after a jury trial.

On May 27, 1976, a Kansas City, Kansas, residence was burglarized and its occupants robbed at gunpoint. Money and several items, including two television sets, were taken. One month later defendant was arrested and taken to the police station for questioning. After several hours he gave a statement to police which was tape recorded and transcribed. Defendant signed the transcription.

At trial the confession was introduced over objection. Since the victim couldn't identify defendant as his assailant the confession was the state's key evidence.

As his first point on appeal defendant argues the transcribed confession was inadmissible because of the best evidence rule (K.S.A. 60-467). It is argued that only the tape recording of defendant's confession could be introduced. The argument is without merit.

Under the circumstances of this case the typed confession, while taken from the tape recording, was not secondary evidence of the tape recorded confession. Defendant read and signed each page of the six-page confession, pointed out a mistake on one page, and corrected the error by supplying the correct information. Once this was done the typewritten confession became independent evidence and was no longer merely a transcription of the tape. K.S.A. 60-467 did not apply. (*People v. Davis,* 210 Cal. App. 2d 721, 738-39, 26 Cal. Rptr. 903 [1962]; *State v. Melerine,* 236 La. 881, 109 So. 2d 454 [1959].)

Even if defendant had not signed the confession and the best evidence rule applied to tape recordings, the transcript would be admissible. (See, K.S.A. 60-401 [*m*]; *United States v. Gonzales-Benitez,* 537 F.2d 1051, 1053 [9th Cir. 1976]; *United States v. McMillan,* 508 F.2d 101, 105 [8th Cir. 1974], cert. denied 421 U.S. 916, 43 L.Ed.2d 782, 95 S.Ct. 1577; Vernon's K.S.A. Code of Civ. Proc., Sec. 60-467, p. 636.) The evidence shows that after defendant read the confession and signed it the original tape was erased. Under K.S.A. 60-467(*a*)(1) secondary evidence may be introduced if the original has been lost or destroyed without fraudulent intent. (See, *In re Estate of Marcotte,* 170 Kan. 189, 224 P.2d 998; *Knauer v. Morrow,* 23 Kan. 360. See also, *United States v. Gerhart,* 538 F.2d 807, 809 [8th Cir. 1976]; *United States v. Conway,* 507 F.2d 1047, 1052 [5th Cir. 1975]; *United States v. Byrne,* 422 F. Supp. 147, 164 [E.D. Pa. 1976]; *United States v. Maxwell,* 383 F.2d 437, 442 [2d Cir. 1967]; *McGuire v. State,* 200 Md. 601, 606, 92 A.2d 582 [1952].) On several occasions federal courts have considered the effect of tapes erased by law enforcement officials. In *United States v. Mirro,* 435 F.2d 839, 841 (7th Cir. 1970), the court said:

"Neither does the fact that the original tapes were destroyed render the available evidence on the transcribed logs inadequate. It is the general practice of the F.B.I. to use logs rather than tapes in its investigations. The tapes are usually erased or destroyed after their transcription into logs. There was no evidence at the hearing that this method of transcription lacked authenticity."

(See also, *United States v. Balistrieri,* 436 F.2d 1212, 1214 [7th Cir. 1971]; *United States v. Balistrieri,* 403 F.2d 472, 476 [7th Cir. 1968].)

The last sentence in *Mirro* reveals another critical flaw in

defendant's argument—at no time has he suggested that the contents of the typewritten confession are less than the truth. Absent some indication of a discrepancy, secondary evidence should be admitted. (*City of Dunlap v. Waters,* 99 Kan. 257, 260, 161 Pac. 641; *People v. Finch,* 216 Cal. App. 2d 444, 453, 30 Cal. Rptr. 901 [1963]; *People v. Albert,* 182 Cal. App. 2d 729, 742, 6 Cal. Rptr. 473 [1960]; *United States v. McMillan,* supra; *United States v. Hawke,* 505 F.2d 817, 823 [10th Cir. 1974], cert. denied 420 U.S. 978, 43 L.Ed.2d 658, 95 S.Ct. 1404; *United States v. Mirro,* supra; *Fountain v. United States,* 384 F.2d 624, 631 [5th Cir. 1967]; *United States v. Worley,* 368 F.2d 625, 626 [4th Cir. 1966]; *Johns v. United States,* 323 F.2d 421 [5th Cir. 1963]; *United States v. Riccobene,* 320 F. Supp. 196, 203 [E.D. Pa. 1970].)

It must be remembered that the best evidence rule is not an inflexible exclusionary rule, but a preferential rule. (*State v. Joseph Little,* 201 Kan. 101, 104, 439 P.2d 383.) It was said in *United States v. Manton,* 107 F.2d 834, 845 [2d Cir. 1939], long before the advent of our present evidentiary code:

". . . [T]he best evidence rule should not be pushed beyond the reason upon which it rests. It should be 'so applied', as the Supreme Court held in an early case, 'as to promote the ends of justice, and guard against fraud or imposition.' Renner v. Bank of Columbia, 9 Wheat. 581, 597, 6 L.Ed. 166. See also United States v. Reyburn, 6 Pet. 352, 366, 8 L.Ed. 424; Minor v. Tillotson, 7 Pet. 99, 100, 8 L.Ed. 621. The rule is not based upon the view that the so-called secondary evidence is not competent, since, if the best evidence is shown to be unobtainable, secondary evidence at once becomes admissible. And if it appear, as it does here, that what is called the secondary evidence is clearly equal in probative value to what is called the primary proof, and that fraud or imposition, reasonably, is not to be feared, the reason upon which the best evidence rule rests ceases, with the consequence that in that situation the rule itself must cease to be applicable, in consonance with the well established maxim—cessante ratione legis, cessat ipsa lex.

"An over-technical and strained application of the best evidence rule serves only to hamper the inquiry without at all advancing the cause of truth. 'The fundamental basis,' the Supreme Court has said, 'upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth.' Funk v. United States, 290 U.S. 371, 372, 381, 54 S.Ct. 212, 215, 78 L.Ed. 369. . . ."

Defendant's second point relates to an inadvertent statement made by a witness at trial. A uniformed police officer testified that he found defendant while he was looking for a car connected with an armed robbery or a possible homicide. It is the mention

of the word "homicide" which upsets defendant. After the witness completed his testimony, defense counsel moved for a mistrial.

This court has had previous occasion to discuss unsolicited and unresponsive answers to proper questions. (See, *State v. Mitchell,* 220 Kan. 700, 556 P.2d 874; *State v. Robinson,* 219 Kan. 218, 547 P.2d 335; *State v. Bradford,* 219 Kan. 336, 548 P.2d 812; *State v. Childs,* 198 Kan. 4, 422 P.2d 898.) These cases recognize it is impossible for a trial court to exclude in advance an improper response to a question and, therefore, focus on the degree of prejudice which resulted. Under the circumstances we agree with the trial court that the remark was harmless and it was not an abuse of discretion to refuse to grant a mistrial. (K.S.A. 22-3423; *State v. Rueckert,* 221 Kan. 727, 735, 561 P.2d 850.)

Finally, defendant contends he should have been discharged at the conclusion of the state's evidence. The long-standing applicable test for a motion for acquittal is set out in *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290, wherein we held:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. 3.)

The state's evidence showed a man was robbed in his home by two people armed with deadly weapons, property including a shotgun and shoulder holster was taken, and a witness testified defendant and another man brought items including a shotgun and a shoulder holster to his house. This property was recovered and identified at trial by the victim as property taken in the robbery. Finally, the state introduced defendant's statement admitting his participation in the crime. From this evidence a jury could reasonably infer defendant committed the aggravated burglary for which he was charged and could conclude he was guilty beyond a reasonable doubt.

The judgment of the trial court is affirmed.