CORRECTED
No. 114,024

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL W. RODMAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Kansas best evidence rule, codified at K.S.A. 60-467(a), states that no evidence other than the writing itself is admissible to prove the contents of the writing. The rule applies to exclude secondary evidence only when the terms or contents of the writing are at issue.

2.

Evidentiary errors that do not affect a party's substantial rights are harmless and may be disregarded pursuant to K.S.A. 2015 Supp. 60-261.

3.

The best evidence rule is a preferential rule and not a strict exclusion rule.

4.

Unless its prejudicial effect outweighs its probative value, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible and may be considered for its bearing on any matter to which it is relevant and probative pursuant to K.S.A. 2015 Supp. 60-455(d).

1

5.

Even if evidence is both probative and material, the trial court must still determine whether the probative value of the evidence substantially outweighs its potential for producing undue prejudice. K.S.A. 60-445.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed October 28, 2016. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and BUSER, JJ.

PIERRON, J.: A jury convicted Michael W. Rodman of one count of aggravated indecent liberties with a child and imposed a hard 40 sentence. On appeal, Rodman argues the district court erred under the best evidence rule by admitting a photocopy of a drawing by the victim. Additionally, he contends the district court erred by admitting evidence of a prior sexual offense, as it was irrelevant and highly prejudicial.

In April 2014, the State charged Rodman with one count of aggravated indecent liberties with a child, in violation of K.S.A. 2013 Supp. 21-5506(b)(3)(A), (c)(2)(C)(3), for the lewd fondling or touching of a child under the age of 14 or the touching of the defendant by a child. The complaint indicated the victim was 5 years old.

Prior to trial, the State filed a motion to admit evidence of a prior sexual offense conviction. Citing recent statutory and caselaw developments surrounding K.S.A. 2015 Supp. 60-455(d), the State argued that evidence of the prior sexual offense was

admissible as long as it was relevant and probative. It sought to admit the evidence to demonstrate Rodman's propensity to commit sexual offenses against a young girl. The State contended that Rodman was convicted of aggravated indecent liberties with a child in 2002, based on his touching an 8-year-old girl's genitalia in a communal sauna room and asking her to touch his genitals. A family member saw the touching and ended it. The State contended the prior conviction was relevant and probative, as it was the same offense as charged in the instant case and involved a highly similar set of facts. Additionally, the State contended the evidence would not result in undue prejudice as it would not produce the wrong result in light of all of the circumstances surrounding the case.

Before trial, defense counsel objected to the admission of Rodman's prior aggravated indecencies with a child conviction. Counsel argued the evidence was neither relevant nor probative and any possible probative value was substantially outweighed by its likely prejudicial effect. Counsel argued the jury would likely convict Rodman based solely on emotion and the prior conviction. The district court granted the State's motion to admit the evidence of Rodman's prior sexual offense conviction, noting the language of K.S.A. 2015 Supp. 60-455(d) and briefly referencing cases cited in the State's motion. Based on the statutory language and caselaw "as it relates to the admission of prior convictions for sex offenses in a criminal trial involving sex offenses," the court denied the objection. While maintaining a continuing objection to admission of the evidence, counsel agreed to allow the evidence to come in as a joint stipulation.

At trial, A.L. testified she had a daughter, A.M.S., who was 6 years old at the time of trial. Earlier the previous year, she lived with A.M.S and the child's father, M.S. Rodman was a high school friend of M.S. and stayed with them on some weekends. Rodman slept on a couch in the family room while the others had bedrooms of their own. One weekend morning, A.L. saw A.M.S. standing in front of Rodman, who was lying down on the couch. A.M.S.' pants and underpants were pulled down to just above her

3

knees. At first, A.L. thought her daughter may have just come out of the bathroom and forgotten to pull her clothes up. She checked the bathroom and the toilet seat was up, indicating that a male had been the last person to use the bathroom. She did not want to make a scene without more information, so she spoke to A.M.S. later that same day without saying anything to Rodman.

When A.L. asked A.M.S. about the incident, A.M.S. told her that "she touched him there and it made it wake up," whereas, before she touched it, it was asleep. A.M.S. did not say anything at the time about Rodman touching her, although she did say he looked at her exposed genitalia and said it was supposed to be a secret. A.L. notified the police, who interviewed her and A.M.S.

On cross-examination, A.L. testified Rodman's head was up, not down, when she saw him on the couch with A.M.S. in front of him. He had a blanket over him, and she could not see A.M.S.'s hands. She testified A.M.S. was potty trained but still had occasional accidents and walked in on people using the bathroom. A.M.S. never appeared to be afraid of Rodman or seemed to avoid him. She would occasionally wake him up by jumping on him. A.L. indicated she did not always get along with Rodman, as Rodman believed she should spank A.M.S. more often.

On redirect examination, A.L. stated that M.S. had described genital areas to A.M.S. as "no-no" zones when talking about physical privacy. To her knowledge, A.M.S. had never awakened Rodman or anyone else by grabbing their penis. On recross, A.L. stated she had not checked the bathroom closest to the family room, but A.M.S. did not use that bathroom.

A.M.S. testified that she was 6 years old and she understood the difference between telling the truth and not telling the truth. She stated she knew Rodman and she last had seen him at M.S.'s house. She remembered speaking to a detective, but she could

4

not recall what she had spoken about with him. She recalled something happening the last time she saw Rodman that was supposed to be a secret, he told her it was a secret, but she could not immediately remember what happened. She testified her genitals were her "no-no zone" and Rodman had touched her there at some point with his hand inside her pants. She also stated she had seen Rodman's "no-no zone" and she had touched it even though she did not want to. She identified Rodman in the courtroom.

M.S. testified he was A.M.S.'s father. A.M.S. had never tried to awaken him by grabbing his penis or otherwise even tried to touch it. On cross-examination, M.S. testified that A.M.S. had walked in on people in the bathroom every once in a while out of curiosity, but he has instructed her about body privacy. He kept a close eye on her around Rodman and had never witnessed any inappropriate behavior. A.M.S. used to wake Rodman up and get under the covers with him, and she used to jump on everyone but not to wake them up.

Lara Rohlman testified she was a forensic nurse examiner and her responsibilities included taking a history from potential patients and examining them. She interviewed A.L. and A.M.S. on April 7, 2014, when A.M.S. was still 5 years old. She spoke first with A.L., who described seeing A.M.S. in front of Rodman with her pants and underpants down. A.L. told her A.M.S. indicated she had only touched Rodman "when it's sleeping" and that she woke it up.

Rohlman testified she interviewed A.M.S. separately, testing her anatomical knowledge and learning she referred to genitalia as a "no-no zone." A.M.S. told Rohlman she had touched Rodman's "no-no zone" when it was asleep, and Rohlman confirmed with her that it was Rodman's penis. A.M.S. drew a picture of what the penis looked like asleep and what it looked like awake. Rohlman described the two images—the sleeping version was skinny and floppy at the end and pushed over, while the awake drawing was

5

large and round. The State showed Rohlman a photocopy of the drawing, and she confirmed that it was a fair and accurate copy.

The State moved to admit the copy of the drawing, but defense counsel objected under the best evidence rule and contended that the evidence was cumulative. The district court immediately denied the cumulative objection. The State and Rohlman indicated the original drawing was not in the courtroom. The State advised the court that Rohlman had already testified the copy was a fair and accurate representation, and the court admitted the copy of the drawing.

Rohlman testified she asked A.M.S. about how she touched Rodman's penis and she replied she did so with her fingers. A.M.S. picked up a small spoon and stroked it up and down to demonstrate. Rohlman did not hand her the spoon, rather A.M.S. picked it up on her own and spontaneously began the demonstration.

On cross-examination, Rohlman testified that A.M.S. was not upset or crying during the interview. She also verified she did not find any injury on A.M.S.

Detective Aaron Kern testified A.L. told him she had found A.M.S. in front of Rodman with her pants and underpants down and this was not normal behavior. She also told him that A.M.S. had told her Rodman wanted to see her "no-no area" that day but he had not touched it. A.M.S. also told A.L. that Rodman wanted her to "wake it up," referencing his "no-no."

Det. Kern next interviewed A.M.S. Since she did not use advanced anatomy terms, he adopted her terminology when speaking with her. He reviewed anatomy with her, and she indicated that Rodman had touched her genitals with his finger. She also told him Rodman asked her to touch his penis in order to "wake it up." She pushed it up and down

6

until it was awake, and it was straight when it was awake with a hole on top. The State played a recording of the interview for the district court.

Det. Kern testified Rodman was nervous but cooperative at the start of his interview. Rodman told him he arrived at M.S.'s house at about 2 a.m. and he played video games with M.S. before going to sleep. Rodman first indicated that A.M.S. had walked in on him in the bathroom and that they had seen one another's genitalia, which they should not have. He was concerned M.S. would not understand why she would be in the bathroom with him. He denied touching A.M.S. He stated she had jumped on him and crawled on him, which was normal behavior for her, and he gave her a wedgie, which may have exposed part of her buttocks.

Rodman initially "vehemently denied" that A.M.S. had touched his penis, but, after Det. Kern confronted him with detailed information from her, he said he had consumed some whiskey the night before and woke up with an erection. Rodman informed Det. Kern that A.M.S. had grabbed his penis with her whole hand where it was sticking out of his shorts. Det. Kern testified it took some time for Rodman to admit to this touching and his version of events changed when he was confronted with additional information. Rodman said he loved A.M.S. and M.S., he indicated he was the child's best friend, and he asked her to keep it a secret that she saw him in the bathroom.

On cross-examination, Det. Kern testified that A.M.S. told him she had pulled the waistband of her pants out and neither she nor Rodman had pulled her pants down. M.S. also confirmed that A.M.S. sometimes walked in on people in the bathroom. Rodman told her he wanted to be as nice as possible to A.M.S. when he woke up and found her grasping his penis, and he did not want to be mean when correcting her behavior. Rodman denied ever asking her to touch him. He told Det. Kern that A.M.S. smelled as though she may have had a bathroom accident.

7

The State offered a joint stipulation regarding Rodman's prior conviction for aggravated indecent liberties with a child, and defense counsel continued its objection to its admission. The district court overruled the objection on the same bases as given before trial. The State read a brief stipulation to the facts surrounding the prior conviction into the record. The stipulation indicated that Rodman had been convicted of one count of aggravated indecent liberties with a child in 2002 when he was 21 years old and he touched the genital area of an 8-year-old girl. The State rested its case. Defense counsel moved for a judgment of acquittal, but the court denied the motion. The defense declined to present evidence.

During deliberations, the jury asked to review the video recording of Det. Kern's interview with A.M.S. The district court replayed the recording in the presence of Rodman and counsel. The jury found Rodman guilty of the sole count.

At a hearing, the district court denied defense motions for a judgment of acquittal or a new trial. The court sentenced Rodman to a hard 40 sentence, as well as imposing lifetime postrelease supervision and electronic monitoring.

Rodman argues the district court erred by admitting the copy of A.M.S.'s drawing over defense counsel's best evidence rule objection. He contends the State sought to admit the document in order to prove its contents, namely that A.M.S. knew the difference between an erect penis and a flaccid one. The State only produced a copy, however, not the original drawing. He asserts this rendered the document inadmissible under K.S.A. 60-467(a), the best evidence rule, despite Rohlman's declaration that the copy was a fair and accurate representation of the original drawing, that is not an exception to the best evidence rule, and the court did not indicate it relied on any of the statutory exceptions when it admitted the document. Rodman further argues the admission of the drawing was highly prejudicial, as it supported the State's theory that Rodman had actually asked A.M.S. to "wake up" his penis and she had not testified as to

8

why she had touched it. Rodman contends the erroneous admission of the copy of the drawing was not harmless, and he asks us to reverse his conviction and remand for a new trial.

The State emphasizes in its brief that the best evidence rule is a preferential rule, not a rigid exclusionary rule. It first argues the rule does not actually apply to the copy of the drawing as its content was not at issue. The accuracy of the copy was never in question, no fraud or imposition was suggested, and a search for the original would only have resulted in a delay of the trial, so the reasons for implementing the best evidence rule are inapplicable. The content of the drawing—the difference between an erect penis and a flaccid penis—is common knowledge for most reasonable jurors, and the drawing was submitted to prove that A.M.S. knew the difference at such a young age. Additionally, even if the court erred by admitting the copy against Rodman's best evidence objection, the error was harmless. Rohlman testified without objection about the contents of the drawing before the State ever tried to admit the drawing. Its contents were already known to the jury before the copy was presented. The other evidence of Rodman's guilt was overwhelming, demonstrating that there was no probability that admission of the document affected the verdict.

Appellate review of the admission of evidence requires a multistep analysis. First, a court must determine whether the evidence is relevant. *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). "Relevance has two components: materiality, which is reviewed de novo; and probativity, which is reviewed for abuse of discretion." 303 Kan. at 550-51. A court's consideration of the admissibility of evidence can also require application of statutory rules controlling the admission and exclusion of certain types of evidence. These statutory rules are applied as a matter of law or as an exercise of the trial court's discretion, depending on the applicable rule. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). The erroneous admission of evidence is subject to harmless error review under K.S.A. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013).

The present case involves a challenge to the application of the best evidence rule. In *State v. Robinson*, 303 Kan. 11, 221, 363 P.3d 875 (2015), *disapproved on other grounds by State v. Cheever*, 304 Kan. 866, 375 P.3d 979 (2016), our Supreme Court stated that appellate courts review best evidence challenges for abuse of discretion. This opinion, however, relies on a decision from before the new standard of review for evidence was established. See *State v. Hill*, 290 Kan. 339, 364, 228 P.3d 1027 (2010). The Kansas Court of Appeals has cited to the abuse of discretion standard for best evidence challenges in *Robinson*. See *State v. Gauger*, 52 Kan. App. 2d 245, 249, 366 P.3d 238 (2016).

Neither Rodman nor the State are contesting the relevance of the copy of the drawing. Rodman does contest the admissibility of the drawing under the best evidence rule. Kansas' best evidence rule, codified at K.S.A. 60-467, states:

> "(a) As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds that: . . . (2)(A) the writing is lost or has been destroyed without fraudulent intent on the part of the proponent."

Rodman argues the admission of the copy of the drawing was erroneous because it was not the original. Under K.S.A. 60-467(a)(2)(A), however, the copy would be admissible if the State had lost the original without fraudulent intent. The State claims to have lost the original, and Rodman never alleges fraudulent intent on the part of the State. Thus, this exception clearly applies. As either a matter of law or as an exercise of the district court's discretion, the copy of the drawing was not erroneously admitted.

Furthermore, the rule's nature as a preferential rule and not a strict exclusion rule informs against exclusion in this case. *State v. Goodwin*, 223 Kan. 257, 259, 573 P.2d

10

999 (1977). The reliability and accuracy of the copy has not been questioned, bypassing the fundamental basis for application of the rule, and the copy has the exact same probative value of the original document. 223 Kan. at 259. The best evidence rule prevents fraud and imposition through the restructuring, rearranging, or reproduction of evidence that can mislead the jury or create an imposition for the defendant, and none of these concerns are at issue here. Under this analysis we still hold that the district court did not err under the best evidence rule.

There was ample evidence from A.M.S., Rohlman, and Det. Kern that A.M.S. saw and touched Rodman's penis and she touched it at his request in order to "wake it up." Rohlman testified without objection regarding A.M.S.'s explanation of a sleeping penis and an awake penis. Rohlman also testified, without objection, about the contents of the drawing. The drawing was not a new or unique source of information, as indicated in part by defense counsel's objection to its admission as cumulative. There is no indication that admission of the evidence prejudiced Rodman or affected his substantial rights in the slightest. See K.S.A. 2015 Supp. 60-261.

Rodman argues the district court also erred by admitting evidence of a previous aggravated indecent liberties because the evidence was not relevant and was, therefore, inadmissible. The past conviction involved Rodman touching a child's genitalia, while the current allegation involved a child touching him. Rodman contends the conduct in the two offenses was not sufficiently similar to allow the evidence admitted to show propensity. He argues the evidence was highly prejudicial and not at all probative, failing both a balancing test and a harmless error analysis.

The State argues the evidence of the past sexual offense conviction was relevant for propensity by being a sexual offense and by it being material evidence. Additionally, the conduct in the past offense was similar, if not strikingly similar, to the conduct at bar and therefore was relevant to show a propensity, as both involved Rodman engaging a

11

minor girl in inappropriate sexual touching in a communal area, and the behavior in both cases only stopped when a parent of the child caught Rodman. The State contends that although the admission of the evidence may have had some prejudicial impact, this did not outweigh its probative value, especially in light of the jury's careful deliberations, which required an extra day of trial and during which the jury asked to review the recording of A.M.S.'s interview with police before returning a guilty verdict. The State finally argues that given the similarities between the past and present convictions, the past conviction would have been admissible, like nonsexual offenses, to prove motive, intent, plan, or absence of mistake, further demonstrating that there was no error and, if there was, any error was harmless.

As noted above, in conducting an appellate review of the admissibility of evidence, a court must first determine whether the evidence is relevant. Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as evidence having "'"any tendency in reason to prove any material fact.'" [Citation omitted.]" *Page*, 303 Kan. at 550. This definition encompasses two elements: a materiality element and a probative element. Standards of review for each element vary.

Evidence is material when the fact it supports is in dispute or in issue in the case. *Bowen*, 299 Kan. at 348. The appellate standard of review for materiality is de novo. *Page*, 303 Kan. at 550.

Evidence is probative if it has any tendency to prove any material fact. *State v. Dupree*, 304 Kan. 43, 64, 371 P.3d 862 (2016). An appellate court reviews the district court's assessment of the probative value of evidence under an abuse of discretion standard. *Page*, 303 Kan. at 550-51.

12

Even if evidence is relevant, a trial court has discretion to exclude it where the court finds its probative value is substantially outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

Under K.S.A. 2015 Supp. 60-455(d), an "act or offense of sexual misconduct" includes both contact between the defendant's genitals and any part of the victim's body and contact between any part of the defendant's body and the victim's genitals. K.S.A. 2015 Supp. 60-455(g)(6)-(7). Relying on federal law that informed the 2009 legislative addition to K.S.A. 2015 Supp. 60-455(d), the Kansas Supreme Court identified various factors for balancing the probative value of propensity evidence in sexual abuse cases against its potential for prejudice:

> "'(1) how clearly the prior act has been proved; (2) how probative the evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: (1) how likely it is such evidence will contribute to an improperly-based jury verdict; (2) the extent to which such evidence will distract the jury from the central issues of the trial; and (3) how time consuming it will be to prove the prior conduct.'" *State v. Bowen*, 299 Kan. 339, 350, 323 P.3d 853 (2014) (quoting *United States v. Benally,* 500 F.3d 1085, 1090–91 [10th Cir.2007]).

There is no question that both Rodman's current conviction and his past conviction are sexual offenses under K.S.A. 2015 Supp. 60-455(g)(6)-(7), and the two offenses are also significantly similar in key respects. Both convictions involved the defendant engaging in sexual touching with a girl under the age of 10, with Rodman touching a child's genitalia in the first case and a child touching Rodman's penis in the instant case. Given the similarities between the past conviction and the current allegations, evidence of the past conviction was relevant to propensity, especially in light of Rodman's defense that A.M.S. touched his penis while he was sleeping instead of in response to solicitation.

13

See *State v. Prine*, 297 Kan. 460, 477, 303 P.3d 662 (2013). The actual touching of Rodman's penis was undisputed, and the only element at bar was his intent, to which his past conduct in a similar situation is relevant and admissible to demonstrate propensity. K.S.A. 2015 Supp. 60-455(d).

The district court granted the State's 60-455 motion with little discussion. It relied on the motion and the cases cited therein, which it explicitly mentioned, and it implicitly rejected Rodman's detailed argument that admission of evidence of the prior conviction would result in prejudice that substantially outweighed the probative value. The language of K.S.A. 2015 Supp. 60-455(d), however, specifically indicates that its admissibility rule is subject to a judicial balancing under K.S.A. 60-445. As such, the district court should have engaged in a sufficiently detailed balancing analysis before granting the State's motion.

The district court's failure to explicitly engage in a balancing inquiry likely amounts to error, but any such error is harmless. *Longstaff*, 296 Kan. at 895. The evidence against Rodman was strong, including testimony from A.M.S. that she touched Rodman's penis and that he touched her genitalia, evidence from Det. Kern that Rodman asked the child to "wake up" his penis, and statements from Rohlman regarding A.M.S.'s knowledge of the difference between a flaccid penis and an erect penis. With such proof of guilt, it does not appear that any error in admitting the evidence of Rodman's prior sexual offense conviction affected his substantial rights or impacted the outcome of the trial. See K.S.A. 2015 Supp. 60-261; *Longstaff*, 296 Kan. at 895 (noting that harmless error analysis requires a court to establish "whether there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record"). Accordingly, we affirm.

Affirmed.