NOT DESIGNATED FOR PUBLICATION

No. 117,516

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARTIN R. PATRICK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed September 14, 2018. Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Shawn M. Boyd*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., MCANANY and POWELL, JJ.

PER CURIAM: Martin Patrick appeals his conviction of driving under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle. The events leading to his conviction took place at about 10:30 on the evening of May 25, 2013, when Officer Jason Colobong of the Tonganoxie Police Department observed Patrick's pickup truck straddling the centerline of the road. Patrick and his girlfriend Lisa Jimenez were returning from the demolition derby at the Tonganoxie fairgrounds. After Colobong displayed his emergency lights, Patrick's truck came to a rolling stop.

The entire traffic stop was recorded on Officer Colobong's body camera. Colobong testified that Patrick had bloodshot eyes and there was the odor of alcohol on his breath. Patrick was swaying and used the truck door to balance himself as he got out of the vehicle. Patrick exhibited multiple signs of impairment on two field sobriety tests that Colobong administered. Patrick told Colobong that he had consumed three or four beers earlier. He said his last beer was consumed about 6 p.m. But Colobong later learned that three or four open and empty beer bottles and cans were found on the floor of the cab of the truck. Colobong asked Patrick how impaired he thought he was based on a scale of 1 to 20. Patrick opined that he was an 11. Colobong took Patrick into custody on the suspicion of driving under the influence of alcohol. At the police station, Colobong read Patrick the DC-70 implied consent advisory form and made sure Patrick understood each line. Patrick was given 20 minutes to consider whether he was willing to take a breathalyzer test. In the end, Patrick refused the test.

The next day, May 26, 2013, the video of Patrick's stop was uploaded to the police department's secure server. Sergeant Jarrod Gill, the evidence custodian for police videos, was in charge of uploading all the police body camera video files onto the secure server. Police video files of DUI stops are retained for two years before being routinely deleted. The department's retention policy was detailed on an online policy manual, which each officer was required to acknowledge.

On May 27, 2014, over a year after Patrick's DUI stop, Officer Colobong issued his affidavit of probable cause alleging that Patrick was DUI. The county attorney did not file charges until February 24, 2015, almost a year after the affidavit was filed.

The video file was "cued for deletion" on May 25, 2015, in accordance with the police department's retention policy. On June 2, 2015, the video file was actually deleted. Colobong was not notified that the video file was scheduled for deletion.

2

During the November 6, 2015 preliminary hearing, Colobong testified that he could not locate the video file of Patrick's stop. He provided a copy of the back page of the DC-70 implied consent form, but he did not have a copy of the front page or the original DC-70 form. (Later, before trial, he located a digitally stored copy of the DC-70 form, including the first page he did not have for the preliminary hearing.)

Patrick moved to suppress the evidence against him, strike Colobong's testimony, and dismiss the case because the video of the stop had been destroyed and the DC-70 form was missing. The district court denied Patrick's motions.

At Patrick's jury trial, the State offered into evidence a copy of the complete DC-70 form. Officer Colobong testified that the copy was a true and accurate scanned copy of the original. Patrick objected based on the best evidence rule. The district court overruled the objection and admitted the copy of the DC-70 form into evidence. The jury convicted Patrick of driving under the influence in violation of K.S.A. 2012 Supp. 8-1567(a)(3) and (b)(1)(E). Patrick's posttrial motion was denied, and he was sentenced to 100 days in jail.

Patrick appeals. He makes two claims: (1) He was denied due process under the 14th Amendment to the United States Constitution when the court denied his motion to dismiss, which was based on the State's failure to preserve the video evidence of his traffic stop; and (2) the district court committed reversible error in admitting the copy of the DC-70 form, which did not comply with the best evidence rule.

*Failure to Preserve Video Evidence*

Patrick asserts that his due process rights under the 14th Amendment were violated because the police acted in bad faith and destroyed evidence that may have favored him in his defense of the State's charge.

3

Whether the State acted in bad faith is a question of fact. *State v. LaMae*, 268 Kan. 544, 551, 998 P.2d 106 (2000). We review the district court's factual findings to determine if they are supported by substantial competent evidence and whether the court's findings are sufficient to support its conclusion of law. *State v. Finley*, 273 Kan. 237, 241, 42 P.3d 723 (2002). We have unlimited review over the district court's legal conclusion. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007).

The Due Process Clause of the 14th Amendment requires the State to provide exculpatory evidence the defendant requests. *Brady v. Maryland*, 373 U.S. 83, 88, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Moreover, the State must disclose such evidence to the defense even if there is no request to do so. *United States v. Agurs*, 427 U.S. 97, 107, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The State also has the duty to preserve evidence that might be expected to play a significant role in defending against the State's charges. *California v. Trombetta,* 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984).

But there is no absolute duty to retain and preserve all material that might be significant evidence in a particular case. Failure to preserve such evidence constitutes a denial of due process only if the defendant can show the State acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). Bad faith requires a showing that the officer knew the exculpatory nature of the evidence at the time it was lost or destroyed. *LaMae*, 268 Kan. at 551.

Patrick argues that the Tonganoxie Police Department acted in bad faith when, through its video evidence retention program, it allowed the video file of Patrick's stop to be deleted when it knew that Patrick's case was going to court.

In *LaMae*, the Kansas Supreme Court held that an officer's conduct in compliance with "departmental procedure" indicates that the disposal of evidence was not done in bad faith. 268 Kan. at 551. An inadvertent loss as a result of an administrative policy or

4

oversight does not establish bad faith. *State v. Cofield*, No. 87,789, 2003 WL 22990120, at *4 (Kan. App. 2003) (unpublished opinion). As a corollary, it follows that when the officer's failure to preserve evidence is done "'in good faith and in accord with their normal practice,'" there is no violation of the due process protection established in *Brady*. *Trombetta*, 467 U.S. at 488.

Generally, the defendant must demonstrate that the State had knowledge of the exculpatory value of the evidence at the time it was destroyed. *State v. Beltz*, No. 98,390, 2008 WL 2251236, at *7 (Kan. App. 2008) (unpublished opinion). In *Beltz*, video evidence of a DUI stop was destroyed before the expiration of the police department's three-year retention period. Neither the officer who conducted the stop nor his supervisor who authorized the deletion was aware of any exculpatory evidence contained in the video file. Although the police failed to comply with the department's retention policy, there was no evidence of bad faith in the untimely deletion of the file. 2008 WL 2251236, at *7.

Moreover, speculation that the destroyed evidence may have been exculpatory is insufficient to establish bad faith. *Cofield,* 2003 WL 22990120, at *4; see *Beltz*, 2008 WL 2251236, at *5 (holding that a lost video evidence that *might* exonerate the defendant does not make it exculpatory). In *Cofield,* a videotape containing a State's witness interview was lost or destroyed in the course of a building move by the department. The officers who interviewed the witness testified and were cross-examined. This court determined that it was speculative as to whether there was anything exculpatory on the tape and that there was no evidence of bad faith on part of the State. 2003 WL 22990120, at *4.

Patrick argues that the deliberate destruction of evidence through a scheduled retention program is in bad faith when the program does not require the preservation of evidence long enough for trial. Indeed, it is troublesome that it took the arresting officer

5

over a year after Patrick's DUI stop to issue his affidavit of probable cause and almost another full year for the county attorney to file charges in the case. Further, the retention period is shorter than the statute of limitations for the offense. In any event, the police department's computer program automatically, and without human input, deleted the video file of Patrick's traffic stop a few months after Patrick was charged. But Patrick has not established that the deletion of his video file was done with the intent to hide or conceal evidence. Nevertheless, the Tonganoxie Police Department should consider this case a shot across its bow regarding the practice of waiting so long to bring charges so that little time is left before electronically stored evidence is automatically deleted.

To overcome the hurdle that the value of the missing evidence is speculative, Patrick relies on *State v. Zinsli*, 156 Or. App. 245, 255, 966 P.2d 1200 (1998), for the proposition that the loss of video evidence may violate the defendant's due process right because the missing video would have provided an objective replay of the events from which the jury could have drawn its own conclusions. But our courts have not followed this path. Over the years our courts have held that speculation regarding the exculpatory value of lost or destroyed evidence is not in itself enough to establish a violation of due process rights. Moreover, the United States Supreme Court, the final word on federal constitutional interpretation, held in *Trombetta* that to find a constitutional violation the destroyed evidence must *have* exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. 467 U.S. 489. Here, Patrick had comparable evidence through the vigorous, lengthy, and detailed cross-examination of Colobong at trial. See *Beltz*, 2008 WL 2251236, at *5.

Patrick was not denied due process under the 14th Amendment when the court denied his motion to dismiss, which was based on the State's failure to preserve the video evidence of his traffic stop.

6

*Best Evidence*

Patrick's remaining claim is that the district court erred in admitting into evidence a copy of the DC-70 form which did not comply with the best evidence rule, K.S.A. 60-467. When the State offered Exhibit 1, the copy of the DC-70 form, Colobong stated the exhibit was a true and accurate copy of Patrick's implied consent advisory. "This is the copy that I filled out at the time, with my initials on each line that he said that he understood."

Patrick's counsel objected at trial to the admission of the printout of the scanned DC-90 form. She stated: "It's not the original. And the original is not two pieces of paper, it's back-to-back, and I would object to entering this. It's not the best evidence." When questioned by the judge about the document, Colobong stated: "We keep a digital copy in our records management system. . . . [H]onestly, Judge, I can't speak to what they do with the physical copy of the case that we complete once the arrest is made. I'm not sure where that's kept, but everything we do is scanned into a database." The district court overruled the objection, stating that the exhibit "appears to be derived from the digital image of the original that was kept."

We ordinarily review claims of improper admission of evidence for any abuse by the district court of its discretion. *State v. Robinson*, 303 Kan. 11, 221, 363 P.3d 875 (2015). The district court's action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; or if (2) the court's action is based on an error of law or fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Here, the claimed abuse of discretion arises out of the district court's decision to admit the exhibit which Patrick contends was based on an error of law in applying our best evidence rule. "When the adequacy of the *legal* basis of a district judge's decision on admission or exclusion of evidence is questioned, we review the decision de novo." *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

7

The best evidence rule, set forth in K.S.A. 60-467(a), states:

"(a) As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds that: (1) If the writing is a telefacsimile communication as defined in subsection (d) and is used by the proponent or opponent as the writing itself, such telefacsimile communication shall be considered as the writing itself; (2)(A) the writing is lost or has been destroyed without fraudulent intent on the part of the proponent, (B) the writing is outside the reach of the court's process and not procurable by the proponent, (C) the opponent, at a time when the writing was under the opponent's control has been notified, expressly or by implication from the pleadings, that it would be needed at the hearing, and on request at the hearing has failed to produce it, (D) the writing is not closely related to the controlling issues and it would be inexpedient to require its production, (E) the writing is an official record, or is a writing affecting property authorized to be recorded and actually recorded in the public records as described in exception (s) of K.S.A. 60–460 and amendments thereto or (F) calculations or summaries of content are called for as a result of an examination by a qualified witness of multiple or voluminous writings, which cannot be conveniently examined in court, but the adverse party shall have had a reasonable opportunity to examine such records before trial, and such writings are present in court for use in cross-examination, or the adverse party has waived their production, or the judge finds that their production is unnecessary."

Secondary evidence in place of the original is admissible as provided in K.S.A. 60-467(b), which states, in part: "If the judge makes one of the findings specified in subsection (a), secondary evidence of the content of the writing is admissible."

The State relies on *State v. Rodman*, 53 Kan. App. 2d 106, 114, 383 P.3d 187 (2016), *rev. denied* 306 Kan. 1329 (2017), for the proposition, recognized in *State v. Goodwin*, 223 Kan. 257, 259, 573 P.2d 999 (1977), that the best evidence rule is not an inflexible exclusionary rule but a preferential rule.

The context of that statement in both *Rodman* and *Goodwin* is significant. In *Goodwin*, the issue was the admissibility of a typed transcript of an audio recorded confession. The defendant made a correction on one page of the transcript and then signed each page of the typed transcript, after which the original audio recording was erased. The Supreme Court found that the defendant's corrected and signed transcript constituted a confession and admissible independent evidence. Further, even if the transcript had not been signed, the best evidence rule would not have barred its admission because it was secondary evidence in place of the original which had been erased, and the defendant did not challenge the accuracy of the transcript. 223 Kan. at 258.

In *Rodman*, the defendant was charged with aggravated indecent liberties with a child. A forensic nurse examiner interviewed the child victim. The child drew a picture of the defendant's penis when both flaccid and erect. The State offered a copy of the drawing which the forensic nurse examiner testified was a fair and accurate copy of the original drawing. The defendant objected, citing the best evidence rule. The district court admitted the copy of the drawing.

On appeal, before citing *Goodman* for the proposition that the best evidence rule is not an inflexible exclusionary rule but a preferential rule, the *Rodman* court stated:

> "Under K.S.A. 60-467(a)(2)(A), however, the copy would be admissible if the State had lost the original without fraudulent intent. The State claims to have lost the original and Rodman never alleges fraudulent intent on the part of the State. Thus, this exception clearly applies." 53 Kan. App. 2d at 114.

*Goodwin* and *Rodman* present a key operative fact different from the facts now before us. Similar to the situations in *Goodwin* and *Rodman*, Patrick did not articulate at trial a claim that the copy of the DC-70 offered into evidence was materially different from the original. He simply argued when objecting to the admission of the document

9

that "[i]t's not the original. And the original is not two pieces of paper, it's back-to-back." He speculates in his appellate brief that the front and back pages of the DC-70 form admitted into evidence may not have been part of the same document. But this was never articulated to the trial court when the exhibit was offered, and we can hardly find error based on an argument that was never made to the trial court.

But unlike in *Goodwin* and *Rodman*, the State has never contended—at trial or now on appeal—that the original has been lost. Officer Colobong told the court: "We keep a digital copy in our records management system. . . . I can't speak to what they do with the physical copy of the case that we complete once the arrest is made. I'm not sure where that's kept, but everything we do is scanned into a database."

In a Louisiana appellate case, *In re Succession of Greer*, 987 So. 2d 305 (La. App. 2008), the court had an easy time disposing of an argument over the admission of a copy into evidence because, under La. Code Evid. Art. 1001(3), if data are "stored in or copied onto a computer . . . any printout . . . shown to reflect the data accurately, is an 'original.'" Similarly, the Federal Rules of Evidence Rule 1001(d) defines a writing as "the writing . . . itself or any counterpart intended to have the same effect by the person who executed or issued it. For *electronically stored information*, 'original' means any printout . . . if it accurately reflects the information." (Emphasis added.) Fed. R. Evid. 1001(d). Further, Federal Rules of Evidence Rule 1003 states: "A duplicate is admissible to the same extent as an original unless (1) a genuine issue is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Under these definitions, a printed copy of the original accurately scanned DC-70 form which was stored electronically would be admitted as the original writing. But our best evidence rule found in K.S.A. 60-467, which has not been updated for many years, does not consider scanned documents stored in a computer database to be the equivalent

of the original document for evidentiary purposes. The closest K.S.A. 60-467 comes to the electronic age is its recognition of fax copies, which are now considered rather quaint and old fashioned in today's business and professional communities.

In *Robinson*, 303 Kan. at 220, the court considered the admissibility of e-mails under our best evidence statute. An e-mail is generated electronically and stored in a computer where it can be called up to be read on a computer screen or printed out on paper. There is no original tangible document for best evidence purposes. The court noted that "K.S.A. 60-467(a) does not squarely address what constitutes an original for best evidence purposes when 'the writing itself' is stored electronically." 303 Kan. at 222. In the absence of any guidance from our statute, the court turned to the Federal Rules of Evidence we have discussed earlier and concluded that admitting into evidence printouts of e-mail messages did not violate the best evidence rule. 303 Kan. at 222.

Based on the holding in *Robinson*, a panel of our court found in *State v. Gauger*, 52 Kan. App. 2d 245, 252, 366 P.3d 238 (2016), that a printout of an electronically generated invoice that was stored on a computer was properly admitted into evidence as an original document and did not violate the best evidence rule.

*Robinson* and *Gauger* involve documents that never existed in tangible form on paper until they were accessed on a computer database and printed on paper. They dealt with an issue quite different from what is now before us. The printout of the scanned DC-70 form introduced into evidence is not the original document. The original document was a tangible piece of paper that was scanned into the police department's computer system where it was retained in digital form until Officer Colobong accessed it and printed it on paper. There is no evidence that the original DC-70 form has been lost or no longer exists. The computer printout of the form is secondary evidence of the original form.

11

The State has cited, and we have found, no case in which a Kansas appellate court found the admission of secondary evidence to be proper without a showing that some exception to our best evidence rule was satisfied. Thus, the notion that our best evidence rule is not an inflexible exclusionary rule but merely a preferential rule takes a back seat to the clearly expressed statute which provides: "[N]o evidence other than the writing itself is admissible, except as otherwise provided in these rules." K.S.A. 60-467(a).

Under K.S.A. 60-467(a), we can generally describe admissible secondary evidence as evidence that can be admitted in the place of the original document if (1) the document being offered is a fax printout; (2) the original document has been lost or destroyed without fraudulent intent; (3) the original document is outside the reach of the court's process and the proponent of the copy cannot obtain the original document; (4) the opponent has the original document, was asked to bring it to court, and failed to do so; (5) the original document is not closely related to the controlling issues and it would not be expedient to require its production; (6) the original document is an official record or is a recorded document affecting property as described in exceptions of K.S.A. 60-460; or (7) the document being offered is a summary of, or contains calculations from, voluminous original documents used by a qualified witness when the adverse party has had a chance before trial to examine the original documents and the originals are brought to court for use in cross-examination.

In our de novo review of the legal issue of the admissibility of the printout of the DC-70 form in this case, we find that none of the exceptions found in K.S.A. 60-467(a) applies. Accordingly, we conclude that the district court erred in admitting it.

The next question is whether the error was harmless or whether the error requires us to vacate Patrick's conviction and order a new trial. Erroneously admitting a copy of the DC-70 form was harmless if we are persuaded that there is no reasonable probability

12

that the error affected the trial's outcome in light of the entire record. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

The issue for the jury was whether Patrick was driving under the influence of alcohol to a degree that rendered him incapable of safely operating a vehicle. The evidence established that Patrick's girlfriend met him when he got off work in Kansas City. They drove to the Tonganoxie fairgrounds where they arrived at about 6 p.m. Before entering the fairgrounds, they drank beer with friends while sitting on the tailgate of Patrick's truck for about 45 minutes to an hour. Patrick had had nothing to eat all day except for a bacon and egg biscuit at 8 a.m. According to Patrick's girlfriend, he consumed two or three beers before going into the fairgrounds where they attended the demolition derby.

On their way home, they were stopped by Officer Colobong when he saw Patrick's pickup repeatedly drive over the centerline of the highway. When Colobong pulled Patrick over, the pickup slowed to almost a complete stop but continued to roll forward for a couple of car lengths before coming to a complete stop. Colobong observed that Patrick had bloodshot eyes. He was leaning on the truck as he got out. He was swaying and unsteady. Colobong smelled the odor of alcohol on Patrick's breath. Patrick told Colobong he had three or four beers that night. There were empty beer bottles and cans on the floor of the truck cab.

Colobong administered field sobriety tests, and Patrick exhibited multiple clues of impairment on the walk-and-turn test and on the one-leg-stand test. When Colobong asked Patrick how impaired he thought he was based on a scale of 1 to 20, Patrick responded that he was an 11.

With respect to the DC-70 form, nothing on the form tended to establish that Patrick had been driving under the influence of alcohol to a degree that rendered him

13

incapable of safely operating a vehicle. The DC-70 form was introduced to establish a basis for requesting that Patrick submit to an Intoxilyzer breath test. But had the copy of the DC-70 form not been admitted into evidence, Colobong still could have testified about the procedure he followed and the oral advisories he gave Patrick before requesting that Patrick take an Intoxilyzer breath test. Patrick testified that he refused to take the Intoxilyzer breath test because he had heard "through the grapevine" that the Intoxilyzer test results are not accurate.

Considering the record as a whole, we are satisfied that admission of a copy of the DC-70 form did not affect the outcome of Patrick's trial. The error in admitting this exhibit was harmless.

Affirmed.